STATE of Wisconsin, Plaintiff-Appellant,

v.

Corey KLESER, Defendant-Respondent.†

Court of Appeals

*No. 2007AP2827–CRAC. Oral argument November 4, 2008.
—Decided March 10, 2009.*

2009 WI App 43

(Also reported in 768 N.W.2d 230.)

† Petition to review granted 7/15/09.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *J.B. Van Hollen*, attorney general, *John T. Chisholm*, district attorney, and *John M. Stoiber*, assistant district attorney. There was oral argument by *John M. Stoiber*, assistant district attorney.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Devon M. Lee*, assistant state public defender. There was oral argument by *Devon M. Lee*, assistant state public defender.

Before Fine, Kessler and Brennan, JJ.

¶ 1. BRENNAN, J. This is the State's appeal of a nonfinal order of the trial court transferring jurisdiction

of Corey, a juvenile charged with first-degree intentional homicide, battery by a prisoner and substantial battery, from adult criminal court to juvenile court pursuant to WIS. STAT. § 970.032(2) (2005–06),[1] commonly called a reverse waiver. We granted the State's petition for leave to appeal a nonfinal order. All proceedings in the trial court have been stayed pending this appeal.

¶ 2.    There are three issues on appeal. The first is whether, at a reverse waiver hearing, WIS. STAT. § 970.032(2) prohibits the admission of evidence contradicting the offenses charged in the criminal complaint. The second issue, as framed by the State, is whether the trial court erroneously exercised its discretion in transferring the case back to juvenile jurisdiction when it:    (1) relied substantively on the hearsay testimony of the defense's psychologist, Dr. Marty Beyer; (2) admitted and relied on the defense expert's opinion as to the truthfulness of the hearsay; and (3) prohibited the State's psychological expert from interviewing the juvenile regarding the facts of the offenses prior to the reverse waiver hearing. The third issue raised by this court when we granted the State's petition for review was whether the trial court, which was assigned to the juvenile division, was competent to hear a reverse waiver hearing.

¶ 3.    The scope of the admissible evidence at a reverse waiver hearing as to the facts of the offense has not yet been determined by an appellate court in Wisconsin.[2] The trial court here addressed this issue in a

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

[2] We address later in this opinion Corey's argument that *State v. Dominic E.W.*, 218 Wis. 2d 52, 579 N.W.2d 282 (Ct. App. 1998) has decided this issue.

pretrial motion and a five-day "trial" and issued a comprehensive and thoughtful decision. While we appreciate the work of the trial court in this uncharted territory, we construe the statute differently than the trial court.

¶ 4.  We conclude that WIS. STAT. § 970.032(2) prohibits the admission of evidence contradicting the offenses charged in the criminal complaint and that Dr. Beyer's testimony of Corey's version of the offense was inadmissible hearsay. The trial court erred in admitting both. We conclude further that the rules of opinion evidence apply to a reverse waiver hearing as they do to a trial. Additionally, we agree with the parties that the trial court, a circuit court judge assigned to the juvenile division, was competent to hear the preliminary examination and reverse waiver hearing of an original jurisdiction case. We need not reach the other issue raised by the State based on our rulings above. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issues need to be addressed). For all of the following reasons, we reverse and remand for a new § 970.032(2) hearing consistent with the directives in this opinion.

## BACKGROUND

¶ 5.  Corey was first charged with first-degree intentional homicide, a violation of WIS. STAT. § 940.01(1)(a). The criminal complaint states that on November 3, 2006, the body of Ronald Adams, age 57 years, was found by the building manager in the fetal position in the back bedroom of 7100 North 60th Street, Milwaukee, covered in blood. He was naked except for long underwear, which was around his ankles, and a pair of socks. He had a large wound on the top of his head, leaving brain matter exposed. There was blood

832

splatter on the four walls and a small trail of blood out of the bedroom. In the bathroom, there was standing water that was tinted pink in the sink, which also contained several envelopes, a claw hammer with a blue rubber grip and a pair of orange-handled scissors. There appeared to be human skin or brain tissue on the head of the hammer. The medical examiner estimated that Adams had been dead for more than three days. Video from the building showed Corey entering Adams's apartment on October 29, 2006, and then leaving it talking on a cell phone.

¶ 6. The complaint states that Corey's father, Charles, told police his son called him and asked for a ride on the previous weekend. Corey arranged to walk down Mill Road toward Green Bay Road and Charles was to pick him up there. Charles told the police that his son's clothing had bloodstains on it. Corey told his dad that the blood was not Corey's. Charles asked Corey if he had killed someone. Corey said, yes, that he had hit a guy in the head with a hammer because the guy owed him money. Charles later washed Corey's blood-stained clothing.

¶ 7. Corey's statement to the police as reported in the criminal complaint was that he killed Adams by striking him in the head numerous times with a hammer. Corey admitted he stabbed Adams with a scissors after he hit Adams with the hammer. He explained that he placed both the hammer and scissors in water to try to clean off the blood. He also put some envelopes in the water to try to remove his fingerprints from the envelopes. He told the police that after he killed Adams he stayed in the apartment for approximately five minutes trying to find money. He said he had gone to Adams's residence to watch pornography and "display" for Adams while Adams masturbated. He said Adams would

833

pay him $40 to $50 for that. He said that Adams then wanted to have oral or anal intercourse with him, which Corey did not want to do. They had a physical altercation, and he struck Adams in the head with the hammer eight times and continued to strike him in the head after Adams fell to the floor. When he saw that Adams was still alive, he grabbed the scissors and stabbed Adams in the neck multiple times.

¶ 8. The criminal complaint on the first-degree intentional homicide charge was filed on November 8, 2006 in the Milwaukee County Circuit Court Children's Division. At the time of the offense, Corey was fifteen years old. Because of his age and the statute he was charged under, the matter was an original jurisdiction case under WIS. STAT. § 938.183(1)(am). Based on these facts, the case was assigned to the Honorable Mary E. Triggiano, a circuit court judge assigned to the Children's Division.

¶ 9. On November 29, 2006 Corey, represented by counsel, appeared before Judge Triggiano and filed a written Preliminary Hearing Questionnaire and Waiver form signed by both Corey and his attorney. The trial court conducted a colloquy with Corey and counsel and then accepted the waiver of the preliminary examination. The case was adjourned to a later date on Judge Triggiano's calendar for a status conference.

¶ 10. After his arrest on the homicide charge, Corey was initially held in juvenile detention awaiting court proceedings. On January 20, 2007, at the Children's Court Detention Center, according to two deputy sheriff eyewitnesses and a videotape, Corey struck Sean M. Starz, another inmate, numerous times to the right eye area and several times to his back. A criminal complaint was filed on February 7, 2007, charging Corey with substantial battery, a violation of

WIS. STAT. § 940.19(2) and battery by a prisoner, a violation of WIS. STAT. § 940.20(1). Battery by a prisoner is also an original jurisdiction case under WIS. STAT. § 938.183(1)(a).

¶ 11. On February 16, 2007, Corey made his initial appearance before a Children's Division Court Commissioner and the case was put over for a preliminary examination before Judge Triggiano on February 22, 2007. Corey, represented by counsel, filed a Preliminary Hearing Questionnaire and Waiver form which was signed by both Corey and his counsel, and on February 22, 2007, waived his right to a preliminary examination. On February 28, 2007, Corey was transferred to Ethan Allen detention center.

¶ 12. Prior to the reverse waiver hearing, both the State and the defense filed motions regarding their psychological experts. In addition, the defense filed a motion challenging the constitutionality of the reverse waiver statute. On May 24, 2007, the court held its first hearing on the motions and ordered that the State could retain their own psychologist to evaluate Corey, but that defense counsel could be present during the evaluation. Additionally, the court ordered that all evaluations could only be used for the reverse waiver hearing, not for trial or sentencing. All evaluations were ordered to be sealed after the reverse waiver hearing. The court adjourned for further hearing on the defense's motion challenging the constitutionality of the reverse waiver statute.

¶ 13. On July 12, 2007, the court heard arguments regarding the defense challenge to the constitutionality of the statute and denied the motion. The court heard further argument on the State's motion regarding its psychological expert's interview with Corey. The court modified its earlier order and prohibited

the State's psychological expert from asking Corey questions about the offense.

¶ 14.    The court consolidated Corey's two cases into one reverse waiver hearing that commenced on September 18, 2007, and was continued over five days. Corey did not testify at the hearing but among the defense witnesses was Dr. Beyer, who testified to statements Corey made to her about the offenses, and her own opinions as to why Corey killed Adams.

¶ 15.    In its written Decision and Order of November 27, 2007, the court transferred jurisdiction from the adult criminal court to the juvenile court. The court found that Corey had met his burden of showing that:    (1) he could not receive adequate treatment in the criminal justice system under Wis. Stat. § 970.032(2)(a); (2) transferring jurisdiction to the juvenile court would not depreciate the seriousness of the offense under § 970.032(2)(b); and (3) retaining jurisdiction is not necessary to deter Corey or other juveniles from committing the violations under § 970.032(2)(c).

¶ 16.    Among the trial court's findings in its November 27th Decision and Order were direct quotes from Dr. Beyer's testimony repeating Corey's statements to the doctor. The trial court then concluded:

Based on the evidence and the facts and circumstances of this case, I conclude that transferring jurisdiction to the juvenile court would not depreciate the seriousness of the offense. Corey [K.] killed Ron Adams out of rage and fear after Ron Adams tried to assault Corey. Corey [K.] did not go to Ron Adam's apartment that evening to kill him. His act was not cold-blooded or premeditated as we see in many cases in the criminal justice system; rather, his act stemmed precipitously from the trauma he endured his entire life.

¶ 17. Additionally, the trial court found, with respect to the battery by a prisoner case: "There is evidence that Corey [K.] believed he was protecting himself from the other juvenile whom he heard was going to jump him, and that Corey wanted to get the upper hand." After the reverse waiver hearing, the State brought this appeal and the trial court stayed proceedings pending resolution by this court.

## DISCUSSION

### I. Construction of WIS. STAT. § 970.032(2): Whether facts contrary to those in the criminal complaint are admissible at a reverse waiver hearing under § 970.032(2).

¶ 18. The State's argument is that WIS. STAT. § 970.032(2) prohibits the admission of evidence regarding the facts of the offense that contradict the charges in the criminal complaint. Corey, on the other hand, argues that additional facts of the offense are admissible under § 970.032(2) if they are relevant to subsections (a) treatment, (b) the seriousness of the offense, and (c) general and specific deterrence goals, even if they contradict the facts in the complaint.

¶ 19. At the reverse waiver hearing, the trial court here admitted evidence of facts that contradicted those in the criminal complaint regarding intent and supported the affirmative defense of self-defense, finding them relevant to WIS. STAT. § 970.032(2)(a), (b) and (c). The court permitted Corey's psychologist, Dr. Beyer, to testify as to what Corey told her about the facts of the homicide offense and the doctor's opinion as to what motivated Corey to kill Adams. Corey did not testify.

¶ 20. Whether facts contradicting the criminal complaint are admissible at a reverse waiver hearing is an issue requiring statutory construction of WIS. STAT. § 970.032(2), which has not yet been addressed by Wisconsin courts.[3] The construction of a statute and its application to a specific set of facts is a question of law we review *de novo. See Pritchard v. Madison Metro. Sch. Dist.*, 2001 WI App 62, ¶ 7, 242 Wis. 2d 301, 625 N.W.2d 613.

¶ 21. "Statutory interpretation begins with the language of the statute." *State v. Morford*, 2004 WI 5, ¶ 21, 268 Wis. 2d 300, 674 N.W.2d 349. After giving the statutory language its common, ordinary meaning, we next interpret the language in the context it is used in a way that avoids absurd results. *See id.* "Furthermore, a statutory provision must be read in the context of the whole statute to avoid an unreasonable or absurd interpretation. Statutes relating to the same subject matter should be read together and harmonized when possible." *Id.* (footnotes omitted).

¶ 22. Analysis of the context of the section within a statute and within a chapter of the statutes is necessary to determine its meaning. *See State ex rel. Kalal v.*

---

[3] *Dominic E.W.* addressed the sufficiency of evidence for a transfer of jurisdiction under WIS. STAT. § 970.032(2), but did not address the question of the scope of the evidence on the facts of the offense. *See also State v. Armstead*, 220 Wis. 2d 626, 583 N.W.2d 444 (Ct. App. 1998); *State v. Verhagen*, 198 Wis. 2d 177, 542 N.W.2d 189 (Ct. App. 1995). Both cases involved reverse waiver hearings, but neither of which addressed the issue here, the admissibility of evidence contradicting the criminal complaint.

*Circuit Court*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110. The goal of statutory construction is to determine legislative intent. *See Morford*, 268 Wis. 2d 300, ¶ 21. The path to that goal is the language and context of the statute. *Id.* "Thus a court must ascertain the legislative intent from the language of the statute in relation to its context, history, scope, and objective, including the consequences of alternative interpretations." *See id.* (footnote omitted). Finally, we can resort to extrinsic sources such as legislative history. *See State ex rel. Kalal*, 271 Wis. 2d 633, ¶ 44.

## A. *The Language of the Statute*

¶ 23.   WISCONSIN STAT. § 970.032 provides:

**970.032 Preliminary examination; juvenile under original adult court jurisdiction. (1)** Notwithstanding s. 970.03, if a preliminary examination is held regarding a juvenile who is subject to the original jurisdiction of the court of criminal jurisdiction under s. 938.183 (1), the court shall first determine whether there is probable cause to believe that the juvenile has committed the violation of which he or she is accused under the circumstances specified in s. 938.183 (1) (a), (am), (ar), (b), or (c), whichever is applicable. If the court does not make that finding, the court shall order that the juvenile be discharged but proceedings may be brought regarding the juvenile under ch. 938.

**(2)** If the court finds probable cause to believe that the juvenile has committed the violation of which he or she is accused under the circumstances specified in s. 938.183 (1) (a), (am), (ar), (b) or (c), the court shall determine whether to retain jurisdiction or to transfer jurisdiction to the court assigned to exercise jurisdiction under chs. 48 and 938. The court shall retain jurisdiction unless the juvenile proves by a preponderance of the evidence all of the following:

(a) That, if convicted, the juvenile could not receive adequate treatment in the criminal justice system.

(b) That transferring jurisdiction to the court assigned to exercise jurisdiction under chs. 48 and 938 would not depreciate the seriousness of the offense.

(c) That retaining jurisdiction is not necessary to deter the juvenile or other juveniles from committing the violation of which the juvenile is accused under the circumstances specified in s. 938.183 (1) (a), (am), (ar), (b) or (c), whichever is applicable.

¶ 24. The language of WIS. STAT. § 970.032(2) plainly requires the trial court to make a determination, " . . . the court *shall* [*first*] *determine* whether to retain jurisdiction or to transfer jurisdiction . . . ." *Id.* (emphasis added). A determination would not necessarily have to involve a hearing, such as when there is no opposition to the determination.[4] But where there is opposition, the statute's language plainly creates an opportunity for the juvenile to present evidence to influence that determination and possibly transfer jurisdiction back to the juvenile court. "The court shall retain jurisdiction *unless the juvenile proves* . . . ." *Id.* (emphasis added). This opportunity clearly entails a hearing. The statute plainly sets forth that it is the juvenile's burden at this reverse waiver hearing, to a preponderance, to convince the court at that hearing of three different things as set forth in (2)(a), (b), and (c).

---

[4] Although the circuit court has the ultimate responsibility under WIS. STAT. § 970.032 and need not accept the parties' stipulation if it deems it contrary to the public interest, *see State v. Kenyon*, 85 Wis. 2d 36, 45, 270 N.W.2d 160 (1978) ("Prosecutorial discretion to terminate a pending prosecution in Wisconsin is subject to the independent authority of the trial court to grant or refuse a motion to dismiss 'in the public interest.' ").

First, and not an issue here, the juvenile must show that he or she could not receive adequate treatment in the adult system. Second, the juvenile must show that transfer back to juvenile jurisdiction would not depreciate the seriousness of the offense. Third, the juvenile must show that retaining the juvenile in the adult system is not necessary to deter the juvenile or other juveniles from committing the offense he or she is charged with committing. The language of the statute does not specifically address the scope of the relevant admissible evidence on the facts of the offenses at a reverse waiver hearing.

### B. Placement within Wis. Stat. § 970.032

¶ 25.  Because the language of the statute does not explicitly prohibit or permit facts contradicting the criminal complaint at the reverse waiver hearing, we next examine the reverse waiver hearing's context within the statute to determine its meaning. The title clearly indicates that the purpose of the statute as a whole is to describe a two-part process. Part I is a preliminary examination for those categories of cases that are juvenile original jurisdiction cases. Part II is a process for a possible hearing after the preliminary hearing on whether the original jurisdiction should be changed back to juvenile jurisdiction. The finding the trial court makes at the end of Part I, the preliminary hearing, is a significant part of our analysis of the intent of the legislature as to the admissibility of facts contradicting the criminal complaint at a reverse waiver hearing, Part II.

¶ 26.  As is suggested by the title and the fact that juvenile original jurisdiction cases have their own preliminary examination statute,[5] preliminary examina

---

[5] The preliminary examination statute for adult criminal cases is Wis. Stat. § 970.03.

tions on original jurisdiction cases require a slightly different finding than those on adult jurisdiction cases. In an original jurisdiction case, the court is required to determine whether there is probable cause to believe that the juvenile has *committed the violation of which he or she is accused.* In other words, when the court finds probable cause under WIS. STAT. § 970.032(1), it is finding that the juvenile probably committed the offense *charged in the complaint.*

¶ 27. Here, however, Corey waived his preliminary examinations on all his charges. Although the statute gives no special direction for the situation of a waiver of the preliminary hearing, it is clear under Wisconsin law that Corey's waiver operates as a concession that the State had probable cause to believe he committed first-degree intentional homicide, battery by a prisoner, and substantial battery as charged in the criminal complaints. Indeed, Corey's actual Preliminary Hearing Questionnaire and Waiver forms specifically say so.[6] So, whether there is a waiver of the preliminary hearing or a bindover at the end of a WIS. STAT. § 970.032(1) preliminary hearing, the court's finding is the same: the court finds probable cause that the juvenile committed the offense charged in the criminal complaint.

¶ 28. After the preliminary hearing, the juvenile then has the opportunity to present evidence relevant to subsections (a), (b), and (c) of WIS. STAT. § 970.032(2) to try to persuade the court to reverse jurisdiction to

---

[6] Corey and his attorney signed the Preliminary Hearing Questionnaire and Waiver forms for each case admitting that the State had probable cause for each charge. Paragraph five of each form states: "I understand that by waiving the preliminary hearing, I am conceding that the State can establish probable cause, and that I will be ordered to stand trial."

the juvenile court. The facts, at this point, are those in the criminal complaint based on the finding the trial court has just made. Allowing the juvenile to challenge the facts of the offense in a reverse waiver hearing after just stipulating to those facts would be absurd. We are to avoid absurd results. *See Morford*, 268 Wis. 2d 300, ¶ 21. And, it would put the trial court in the very untenable position of finding a different set of facts after a reverse waiver hearing than it just found at the conclusion of the preliminary examination. That is the situation that occurred here.

¶ 29.   The proper place for the juvenile's attack on the charges (before the actual trial) is at the preliminary hearing. If Corey had not waived the preliminary hearing, but had attempted to offer evidence contradicting the charges in the criminal complaint, the trial court would have had an opportunity under Wis. Stat. § 970.032(1) to decide the facts and make a decision as to whether the State had met its burden of probable cause on the *charged offenses*. Corey chose not to attack the facts at a preliminary hearing. The trial court found, upon Corey's waiver, that there was probable cause that Corey had committed all of the offenses he was charged with in the criminal complaint.

¶ 30.   Corey's counsel argues here that having contradictory findings at the end of the preliminary hearing (sub. (1) of Wis. Stat. § 970.032), and at the end of the reverse waiver hearing (sub. (2) of § 970.032) is not a problem because the State can still prove-up the charged offenses later at trial. But this skirts over the significant problem of having contradictory findings by the trial court in the record during the pendency of the case. Here, after the trial court accepted the preliminary examination waivers, thereby finding that probable cause existed to support first-degree intentional

homicide, substantial battery and battery by a prisoner, the trial court found in its November 27, 2007 decision that Corey killed out of rage and fear and struck the prisoner because he was provoked. The trial court's finding from the reverse waiver hearing undermines the intent element of first-degree intentional homicide and battery by a prisoner, and implies a successful self-defense affirmative defense. This creates an absurd result that leaves the record in a contradictory state.

¶ 31.   How do we reconcile the trial court's two findings? Does that mean that the trial court no longer finds probable cause that Corey committed the first-degree intentional homicide as charged? If so, is discharge required under Wis. Stat. § 970.032(1)? The trial court did not discharge Corey here, leaving the contradictory findings hanging in the record. By leaving the findings contradicted, the court created confusion as to which charges should go to the jury at the subsequent trial. Does the State present the original charges and does the jury then get a chance to make findings contrary to the trial court's findings at the reverse waiver hearing? Or are the trial court's findings the law of the case, which prohibits the State from offering evidence at the jury trial on intent or rebutting self-defense? Certainly any of these hypotheticals would be absurd and unworkable. The only reasonable interpretation of § 970.032(2) is that the reverse waiver is limited to the facts already found at the preliminary examination, namely, in this case because Corey waived his right to a preliminary examination, those in the criminal complaint.

## C. The Placement of WIS. STAT. § 970.032 within WIS. STAT. ch. 970

¶ 32. Our conclusion is further supported by an analysis of the context, or placement, of WIS. STAT. § 970.032 within WIS. STAT. ch. 970. It is placed immediately after the adult preliminary examination statute, WIS. STAT. § 970.03, and is given the same name. Clearly the legislature intends both preliminary examinations to be the same, a summary proceeding, not a trial, unless specifically stated otherwise.

■

¶ 33. "A preliminary hearing as to probable cause is not a preliminary trial or a full evidentiary trial on the issue of guilt beyond a reasonable doubt. It is intended to be a summary proceeding to determine essential or basic facts as to probability." *State v. Dunn*, 121 Wis. 2d 389, 396–97, 359 N.W.2d 151 (1984) (citations omitted).

■

¶ 34. The issue at an adult preliminary hearing is whether the State has shown probable cause that a felony has been committed. *See* WIS. STAT. § 970.03. "Requiring a finding of probable cause protects the defendant's due process rights and guards against undue deprivations of the defendant's liberty." *State v. Richer*, 174 Wis. 2d 231, 240, 496 N.W.2d 66 (1993). And yet, despite the goal of protection of the defendant's rights, the preliminary hearing has clearly and repeatedly been found to be a summary proceeding, where plausibility, not credibility of the witnesses is at issue. The issue of credibility is a matter that is properly left for the trier of fact. *Dunn*, 121 Wis. 2d at 397. The rules of evidence do apply, *see State v. Oliver*, 161 Wis. 2d 140, 147, 467 N.W.2d 211 (Ct. App. 1991) with a few exceptions set forth in § 970.03(11), none of which apply here and all of

which are designed to ensure that the preliminary examination is a *summary* proceeding.

¶ 35. By making the reverse waiver hearing statute Part II of the original jurisdiction preliminary hearing statute, and placing it immediately after the regular adult preliminary examination statute, clearly the legislature intended that the procedures for all three should be similar summary proceedings, not "trials."[7]

¶ 36. Our review of the language, context and history of the statute lead us to the conclusion that the plain, unambiguous meaning of Wis. Stat. § 970.032(2) is that evidence of facts of the offense contrary to the preliminary examination or, where the right to a preliminary examination is waived as it was here, the criminal complaint, is not admissible at a reverse waiver hearing.

*D. Dominic E.W.*

¶ 37. We next address Corey's argument that the scope of the admissibility of the facts of the offense at a reverse waiver hearing has already been decided in *State v. Dominic E.W.*, 218 Wis. 2d 52, 579 N.W.2d 282 (Ct. App. 1998). Corey argues that the trial court in *Dominic E.W.* considered evidence that did not come from the criminal complaint. While that may be true (although the actual evidence received is not described in the opinion), the trial court's findings as reported in the opinion do not reveal that any evidence was admitted that contradicted the charges in the criminal complaint. And, more importantly, the court's holding was

---

[7] In its November 27, 2007 decision, the trial court referred to the reverse waiver hearing both as a "trial": "I conducted a trial to determine if there were mitigating or extenuating circumstances . . .," and a "court trial": "A court trial was conducted to determine whether I should keep Corey . . . ."

limited to the sufficiency of the evidence supporting the reverse waiver, not admissibility of evidence.

¶ 38. Dominic was charged as an adult with battery to a correctional officer in violation of Wis. Stat. § 940.20(1) (1997–98). *Dominic E.W.*, 218 Wis. 2d at 54. The issue in the case was whether the trial court properly exercised its discretion in determining that the evidence supported a transfer of jurisdiction. *Id.* at 53–58. The trial court found that Dominic's battery would have been misdemeanor battery but for his victim being a correctional guard. *Id.* at 57. This finding does not reveal that facts were admitted contradicting the charge, but rather that the trial court assigned a lesser weight to the battery based on its comparison to misdemeanor battery. The reviewing court found the weight of the evidence is a matter within the trial court's discretion and that the trial court did not misuse its discretion. *See id.* at 60. Thus, *Dominic E.W.* is not precedent for admitting facts contrary to the criminal complaint at a reverse waiver hearing.

**II. Erroneous Exercise of Discretion: Whether the trial court erroneously exercised its discretion in: (A) relying on hearsay evidence of facts contrary to those in the criminal complaint; (B) admitting impermissible opinion evidence; and (C) prohibiting the State's psychological expert from interviewing the juvenile.**

A. *Hearsay evidence of facts contrary to those in the criminal complaint*

¶ 39. A trial court's decision to retain or transfer jurisdiction in a reverse waiver hearing is a discretion-

ary determination. *See State v. Verhagen*, 198 Wis. 2d 177, 191, 542 N.W.2d 189 (Ct. App. 1995). The reviewing court looks to see if the discretion was exercised and if there was a reasonable basis for the decision. *See id.* Here the basis for the trial court's decision to transfer jurisdiction included the trial court's reliance on facts contrary to the elements of the charges of the criminal complaint and hearsay. In its November 27, 2007 decision the trial court wrote:

> Based on the evidence and the facts and circumstances of this case, I conclude that transferring jurisdiction to the juvenile court would not depreciate the seriousness of the offense. Corey [K.] killed Ron Adams out of rage and fear after Ron Adams tried to assault Corey. Corey [K.]'s [sic] did not go to Ron Adam's apartment that evening to kill him. His act was not cold-blooded or premeditated as we see in many cases in the criminal justice system; rather, his act stemmed precipitously from the trauma he endured his entire life.

¶ 40. The only possible basis for the trial court's conclusion was the testimony of Dr. Beyer reporting what Corey told her, which was contrary to the facts in the criminal complaint. Dr. Beyer testified:

> Corey [K.] reported that the victim attacked him and tried to rape him and that Corey [K.]'s pants were down around his ankles so that he couldn't really move and that in the struggle where after the victim was on top of him, as they struggled, that he felt powerless, that the victim was choking him and that he felt he couldn't breathe and that he was going to pass out, and that he grabbed a hammer and hit the victim with it until he could get out of the victim's grasp.

> He said that he stabbed the victim repeatedly with scissors after that because he remained scared of the victim.

848

Dr. Beyer went on later in that same day: "He said — Corey [K.] said of this situation that he was the victim, and he — the rage that he felt toward his mother, toward her boyfriends, toward his molesters seemed to have been brought out in this situation where he was being sexually assaulted by the victim."

¶ 41. The findings of the trial court above contradict the charges in the criminal complaint, namely the intentional aspect of the homicide, even going so far as an implicit finding of self-defense. For this reason, we conclude that the trial court erred in admitting and relying on this evidence. We next examine the State's hearsay argument.

¶ 42. The State argues that the trial court erroneously exercised its discretion when it substantively relied on Dr. Beyer's testimony of Corey's version of the facts of the offense because that testimony was hearsay and was not otherwise admissible. It should be noted that Corey does not dispute the State's assertion that Dr. Beyer's testimony about what Corey told her was hearsay or that the trial court substantively relied on Corey's statements to Dr. Beyer.[8] Rather, Corey takes the position that it was permissible for the trial court to

---

[8] Although Corey does not justify the admission of this hearsay under any of the statutory exceptions, to eliminate any confusion on remand we note that under WIS. STAT. § 907.03, if an expert's opinion testimony is based on inadmissible hearsay and if that hearsay is of a type reasonably relied upon by experts in her field, the expert's opinion is nonetheless admissible. The rule assumes that experts, because of their expertise, are able to properly assess the information in reaching their opinion. However, the rule does not, by itself, create an exception to the hearsay rule for the otherwise inadmissible basis to the expert's opinion. If there is no rule or statute under which the hearsay is admissible, then the trial court must make a determination whether to allow the opinion alone, without the inadmissible

rely on the hearsay substantively because: (1) it was not a trial, just a pretrial hearing and there was no danger of the evidence being used improperly; (2) it was used for only a limited purpose, i.e., helping the court understand the seriousness of the offense element; and (3) the State waived any hearsay objection in pretrial motions.

¶ 43. First, we address Corey's waiver argument. From our review of the record we conclude that the State never explicitly waived any objection to the trial court's substantive use of what Corey told Dr. Beyer about the "actual facts" of the offense. The cited reference to waiver in Corey's appellate brief is taken out of context. It occurred in the context of the State's request for a relaxation of the hearsay rules with regard to the police report and criminal complaint.

¶ 44. Although the parties and the court anticipated Dr. Beyer's testimony in the pretrial motions, they never directly addressed the issue of the trial court's substantive use of Dr. Beyer's hearsay testimony. In the pretrial motions the parties argued extensively about whether Dr. Beyer's anticipated reference to Corey's version of the facts constituted a waiver of Corey's Fifth Amendment privilege, entitling the State's expert to interview Corey before the hearing. It appears from the record that the first time the issue of substantive use of Dr. Beyer's testimony of Corey's version of the facts of the offense is directly addressed is on appeal. But the first notice that the State had that the court was substantively relying on Dr. Beyer's testimony of Corey's version was in the court's November 27, 2007 Decision and

facts (basis of the opinion) in the record, or permit the inadmissible facts to come into the record also, but not for the truth of the matter asserted. For suggestions of other methods of addressing this issue in trial see State v. Weber, 174 Wis. 2d 98, 107 n.6, 496 N.W.2d 762 (Ct. App. 1993).

Order, which the State immediately sought review from this court. We accepted review of this nonfinal order and the trial proceedings were then suspended.

¶ 45.   So, we hold that the issue was not waived by the State and that the State has sought review of this issue at the earliest point possible in this case. Although the appellate court will generally not review an issue raised for the first time on appeal, this rule of judicial administration does not affect the power of appellate court to deal with the issue. *See Wirth v. Ehly*, 93 Wis. 2d 433, 443–44, 287 N.W.2d 140 (1980). We next address Corey's argument that although the testimony is hearsay, it should somehow be allowed at a reverse waiver hearing under WIS. STAT. § 970.032(2).

¶ 46.   WISCONSIN STAT. § 970.032(2) makes no provision for the admission of hearsay at a reverse waiver hearing. Where a statute does not specifically authorize hearsay, it is generally prohibited, *see* WIS. STAT. § 908.02. It is true that an adult preliminary examination under WIS. STAT. § 970.03(11) permits hearsay in a few very limited circumstances, as to ownership of property or absence of consent, but counsel for Corey does not argue that any of those exceptions apply here.

¶ 47.   The testimony of Dr. Beyer as to what Corey said happened during the offenses is clearly hearsay. There is no dispute about that from any party. Additionally, Corey does not attempt to justify the admission of that hearsay by any statute or rule. Corey admits the hearsay here would not be permitted at trial, but argues, without reference to any authority, that it is permissible at a reverse waiver hearing because this is not as significant a proceeding as a trial. While a

851

reverse waiver hearing is certainly not as significant as a trial, it is nonetheless significant in that it determines jurisdiction. Corey argues that because the reverse waiver hearing is not a trial, there is no risk of hearsay being used improperly. But, as we have shown above, that is precisely what happened here. Accordingly, we conclude that the trial court erred in substantively relying on hearsay.

## B. Impermissible Opinion Evidence

¶ 48.   Additionally, the State argues that the trial court erroneously admitted opinion evidence in violation of *State v. Jensen*, 147 Wis. 2d 240, 432 N.W.2d 913 (1988) and *State v. Haseltine*, 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984). The State argues that Dr. Beyer's testimony expressed an endorsement of the truthfulness of Corey when she said:   "My opinion of the offense as he described it was that it was a rage reaction when he was very fearful, . . . ."

¶ 49.   Similarly the State argues that Dr. Beyer expressed her belief in the truthfulness of Corey's version of the battery when she was asked on cross-examination what had provoked the battery and she said:

Q. · And in that incident, what was the provocation that this guy — he had heard that somebody was after him?

A. Yes, and that there were threatening statements coming from the other person.

¶ 50.   Corey's counsel argues that Dr. Beyer's testimony does not cross the impermissible line and that the proscription against this opinion evidence only applies to a jury trial, not a reverse waiver hearing. Corey's argument is that because the trial court was the

trier of fact in this case, not a jury, the rule prohibiting expert endorsement of the truthfulness of the offender, does not apply.

■

¶ 51.   We need not reach the issue of whether in this case the testimony of Dr. Beyer offended the principle of *Jensen* and *Haseltine* based on our rulings above. But, because we remand for another reverse waiver hearing where this issue may recur, we conclude that we see no reason why the principles of *Jensen* and *Haseltine* do not apply at a reverse waiver hearing just as they do at trial. Whether the trier of fact is a judge or a jury, the principle behind the rule applies.

C. *Prohibiting State's psychological expert from interviewing Corey*

¶ 52.   Finally, the State argues that the trial court erroneously exercised its discretion by prohibiting the State's psychological expert from interviewing the juvenile about the facts of the offense when the juvenile's expert was permitted to do so and then testify as to what the juvenile told him. The trial court at a pre-hearing motion prohibited the State's expert from talking with the juvenile about the offense, although the defense expert could. Given our ruling on the admissibility of the facts of the offense and hearsay above, we need not reach this issue. *See Gross*, 227 Wis. at 300 (only dispositive issues need to be addressed).

## III.   Competence of the Court.

■

¶ 53.   The final issue, which this court directed the parties to address in their briefs, is whether the trial court, here a judge assigned to the juvenile court, is

competent to act as the adult criminal court in the first instance. Both the State and Corey agree that the court in this case was competent. We concur.

¶ 54. The criminal complaint on the first-degree intentional homicide charge was filed on November 8, 2006, in the Milwaukee County Circuit Court Children's Division. At the time of the offense, Corey was 15 years old. Because of his age and the statute he was charged under, his was an original jurisdiction case under Wis. Stat. § 938.183(1)(am).

¶ 55. Under Milwaukee County Circuit Court Chief Judge Directive 96–18 Amended, signed by Chief Judge Patrick T. Sheedy on June 28, 1996, a juvenile who was charged with an original jurisdiction case was to be detained at the Children's Court Center[9] and the initial appearance, preliminary hearing and subsequent trial (if reverse waived) were to be conducted by a circuit court judge assigned to the Children's Division. The case was assigned to Judge Triggiano, a circuit court judge assigned to the Children's Division. This order was within the Chief Judge's powers under SCR 70.19(3)(a), 70.20 and 70.21(4)(12) (2008). Accordingly, the juvenile court here was competent to hear the preliminary hearing waiver and reverse waiver hearing.

*By the Court.*—Order reversed and cause remanded with directions.

---

■■■■■■■

[9] The Directive required detainment in the Children's Court Center unless otherwise ordered by the court. At this point in the case, the court did not make such an order. An order moving Corey was entered at a later date.