STATE of Wisconsin, Plaintiff-Appellant,

v.

Corey KLESER, Defendant-Respondent-Petitioner.

Supreme Court

*No. 2007AP2827–CRAC. Oral argument November 11, 2009.
—Decided July 16, 2010.*

2010 WI 88

(Also reported in 786 N.W.2d 144.)

For the defendant-respondent-petitioner there were briefs and oral argument by *Devon M. Lee,* assistant state public defender.

For the plaintiff-appellant there was a brief by *Sally L. Wellman,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

¶ 1. DAVID T. PROSSER, J. This is a review of a published decision of the court of appeals, *State v. Kleser,* 2009 WI App 43, 316 Wis. 2d 825, 768 N.W.2d 230, which reversed an order of the Milwaukee County Circuit Court, Mary E. Triggiano, Judge. The case concerns the "reverse waiver" procedure for a juvenile who is subject to the exclusive original jurisdiction of the adult criminal court. *See* Wis. Stat. §§ 938.183(1) and 970.032(1) and (2) (2005–06).[1]

¶ 2. The defendant, Corey Kleser (Kleser), then 15, was charged in adult court with first-degree intentional homicide. He waived his right to a preliminary examination under § 970.032(1).

¶ 3. Approximately ten months later, the court conducted a reverse waiver hearing under § 970.032(2) to determine whether the criminal court should transfer jurisdiction of Kleser's case to juvenile court. At the conclusion of a five-day hearing, Judge Triggiano entered an order transferring the case to juvenile court.

---

[1] All subsequent references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

47

¶ 4. As noted, the court of appeals reversed. The court of appeals complimented the circuit court on its "comprehensive and thoughtful decision," *Kleser*, 316 Wis. 2d 825, ¶ 3, but it pointedly differed in its interpretation of the reverse waiver statute and took issue with several discretionary rulings made by the circuit court. The court of appeals remanded with directions for a new reverse waiver hearing.

¶ 5. Kleser filed a petition for review raising two issues:

(1) Did the court of appeals correctly interpret Wis. Stat. § 970.032 to require that any evidence concerning the facts of the crime charged be introduced only at the preliminary hearing?

(2) Did the court of appeals improperly conclude that the trial court abused its discretion in deciding to transfer Kleser to juvenile court?

¶ 6. In granting review, this court directed the parties to address two additional issues:

(3) Whether the trial court erred when it admitted and relied on Dr. Marty Beyer's opinion as to the truthfulness of hearsay statements.

(4) Whether the trial court erred when it considered the full testimony of Dr. Beyer, but prohibited the state's psychological expert witness from interviewing Kleser regarding the facts of the relevant incidents prior to the reverse waiver hearing.

¶ 7. We conclude, first, that a juvenile has a right to a reverse waiver hearing after the criminal court finds probable cause to believe that the juvenile has committed the exclusive original jurisdiction violation or violations of which he is accused. In a reverse waiver

48

hearing, the juvenile must prove all elements set out in § 970.032(2)(a), (b), and (c) , by a preponderance of the evidence. If the juvenile fails to meet his burden of proof, he shall be retained for prosecution in the criminal court. Thus, the juvenile must be given reasonable latitude to offer admissible evidence to satisfy his burden on the three elements. This includes evidence about the offense, supplementing the facts used to establish probable cause, to put the offense in context. The juvenile may not offer evidence in the reverse waiver hearing for the purpose of contradicting the offense charged. The place to offer evidence for the purpose of contradicting the offense charged is the preliminary examination.

¶ 8. Second, we conclude that the circuit court erred in granting reverse waiver here, for three reasons: (1) the court substantively relied on inadmissible hearsay testimony from Dr. Beyer describing the events of the offense; (2) the court allowed Dr. Beyer to offer inadmissible opinion testimony regarding Kleser's truthfulness; and (3) the court erroneously prohibited the State's psychologist from interviewing Kleser regarding the facts of the offense while permitting Dr. Beyer to testify as a conduit for Kleser's account of the facts of the offense.

¶ 9. Finally, we conclude that remand for a new reverse waiver hearing would not be appropriate under the facts of this case.

¶ 10. Consequently, we affirm the decision of the court of appeals reversing the circuit court order transferring jurisdiction of this case to the juvenile court, but we reverse the court of appeals' order remanding the case for a new reverse waiver hearing, and remand the case to adult criminal court for trial.

## I. BACKGROUND AND PROCEDURAL HISTORY

A. Facts in Criminal Complaint

¶ 11. On November 3, 2006, Ronald Adams (Adams) was found dead in his apartment in the City of Milwaukee. He was in a fetal position, covered with blood, and naked except for a pair of long underwear around his ankles and a pair of socks. Adams had a large wound on his head with brain matter exposed. His blood was splattered on the walls of the apartment and in a trail out of his back bedroom. The sink in Adams' bathroom contained a hammer, a pair of scissors, and standing water that was tainted pink. The head of the hammer carried remnants of human skin and brain tissue.

¶ 12. A doctor from the Milwaukee County Medical Examiner's Office determined that Adams had been dead for more than three days. He also determined that Adams suffered at least 20 blows to the head with a blunt object, 30 stab wounds to the neck, and various other wounds, including a defense wound on the finger. The doctor ruled Adams' death a homicide.

¶ 13. Video surveillance from the hallway outside Adams' apartment showed that Adams last entered his apartment on October 29, 2006, at 1:49 a.m. The video showed that he entered the apartment with Kleser. It also showed Kleser leaving the apartment at 2:48 a.m., while talking on a cell phone. A witness later confirmed seeing Kleser in the hallway around 1:50 a.m. on October 29, 2006.

¶ 14. Two days after the body was found, a detective spoke with Kleser's father, Charles, who said that he had received a phone call from Kleser between 3:00 and 5:00 a.m. the weekend of the homicide. According to Charles, Kleser had called and asked him for a ride

home. When he came to pick up Kleser, he observed bloodstains on Kleser's clothes, and Kleser admitted that the blood was not his. Charles asked if he had killed someone, and Kleser responded yes, that he hit the victim in the head with a hammer and that the victim owed him money.

¶ 15. When questioned by police, Kleser admitted that he killed Adams. He said that he had hit him in the head with a hammer and stabbed him with scissors. He then attempted to wash the scissors and hammer in the sink to clean them. He said that he had gone to Adams' apartment to "display," or pose nude, while Adams masturbated, for which Adams would pay Kleser $40 to $50. He said that Adams then wanted to have anal or oral sex with Kleser, which Kleser did not want to do. A physical altercation ensued, during which Kleser hit Adams in the head with a hammer and continued to hit him after he fell to the floor. Kleser stated that he stabbed Adams in the neck multiple times with a pair of scissors after he realized that Adams was still alive.

B. Procedural History

¶ 16. On November 7, 2006, the Milwaukee County District Attorney's office filed a criminal complaint alleging the facts outlined above. The complaint charged Kleser with first-degree intentional homicide.[2] Kleser was held in the Milwaukee County Children's Court Center. The Milwaukee County Circuit Court scheduled a preliminary hearing for November 29. Kleser ultimately submitted a Preliminary Hearing Questionnaire and Waiver form, signed by himself and his attorney. In this form, Kleser declared that he wished to waive the preliminary examination. The form

---

[2] Wis. Stat. § 940.01(1)(a).

states, in part: "I understand that by waiving the preliminary hearing, I am conceding that the State can establish probable cause, and that I will be ordered to stand trial." At the November 29 hearing, Kleser acknowledged that he had signed the form and understood that he was giving up the right to a preliminary examination.

¶ 17. Kleser was later charged with substantial battery[3] and battery by a prisoner[4] as a result of an assault he committed in the Children's Court detention center against another inmate on January 20, 2007. Kleser also waived his right to a preliminary examination on these charges.

¶ 18. On October 29, 2006, Kleser was 15 years old. On January 20, 2007, the date of the battery, he was 16 years old. Courts of criminal jurisdiction have *exclusive* original jurisdiction over juveniles alleged to have committed a violation of Wis. Stat. § 940.01, first-degree intentional homicide, on or after the juvenile's tenth birthday. *See* Wis. Stat. § 938.183(1)(am). Courts of criminal jurisdiction also have *exclusive* original jurisdiction over juveniles who have been adjudicated delinquent and are charged with a violation of Wis. Stat. § 940.20(1), battery by a prisoner. *See* Wis. Stat. § 938.183(1)(a).[5]

---

[3] Wis. Stat. § 940.19(2).

[4] Wis. Stat. § 940.20(1).

[5] Wisconsin Stat. § 938.183(1)(a) provides original jurisdiction in battery by prisoner charges over "[a] juvenile who has been adjudicated delinquent." This delinquency requirement appears to have been satisfied for Kleser by several earlier delinquency adjudications, including theft of movable property under $2,500 in violation of Wis. Stat. § 943.20(1)(a) and operating a vehicle without owner's consent in violation of Wis. Stat. § 943.23(3m).

¶ 19. Juveniles whose cases are charged originally in courts of criminal jurisdiction have a statutory right to a reverse waiver hearing after the criminal court finds probable cause. In late February 2007, Judge Triggiano scheduled a reverse waiver hearing for May 24 to determine whether Kleser's case should be transferred to juvenile court. This hearing was rescheduled twice to mid-September. On February 28, Kleser was transferred to the Ethan Allen detention center.

¶ 20. On March 27, 2007, the circuit court ordered Kleser to undergo a psychological examination by the State's expert, Dr. Deborah L. Collins, in preparation for the reverse waiver hearing, inasmuch as Kleser had engaged his own psychologist, Dr. Beyer, and met with her in January. Kleser objected on grounds that the examination violated his right against self-incrimination and that Wisconsin law does not provide for a court-ordered psychological examination prior to a finding of guilt.

¶ 21. On April 25, 2007, the court held a hearing on Kleser's objection. The State argued that it was entitled to examine Kleser because Kleser would presumably call Dr. Beyer at the reverse waiver hearing and it would be unfair to allow the defense to present a psychological expert while prohibiting the State from doing so. The court thereafter withdrew its order for a psychological examination, and it asked the State to present case law or statutory authority allowing it to require Kleser to submit to examination by the State's psychologist.

¶ 22. On May 1, 2007, the State moved the court to reconsider on the grounds that (1) Kleser would waive his privilege against self-incrimination by introducing evidence of his mental health; and (2) there would be no issue of self-incrimination because the

53

State would be prohibited from using information gathered at the reverse waiver hearing in a subsequent criminal proceeding.

¶ 23. On May 24, 2007, the court held a hearing on the State's motion. The State argued that, if Kleser intended to present psychological evidence, he opened the door to being examined by the State's expert. After hearing arguments, the court allowed the examination. However, in an effort to protect Kleser's privilege against self-incrimination, the court ordered that the information be sealed after the reverse waiver hearing. The court also permitted defense counsel to be present during the examination.

¶ 24. The State then brought a motion challenging the court's decision to permit defense counsel to be present at the examination. On July 12, 2007, the court heard arguments on this motion. The State argued that its expert, Dr. Collins, was unwilling to perform the examination if defense counsel were present, because defense counsel's presence would compromise the examination. At this hearing, the court ruled that Dr. Collins could examine Kleser but required that the examination be limited to the three elements in § 970.032(2) and not involve discussion of the victim or the events of the alleged offenses.

¶ 25. On September 18, 2008, the court began a reverse waiver hearing on both the homicide and battery by prisoner cases. The court explained that it would be seeking evidence pertaining to whether (1) if convicted, Kleser could not receive adequate treatment in the criminal justice system; (2) transferring jurisdiction to the juvenile court would depreciate the seriousness of the offenses; and (3) retaining jurisdiction was

necessary to deter Kleser or other juveniles from committing the offenses charged. These are the elements set out in § 970.032(2).

¶ 26. The parties presented extensive testimony at the reverse waiver hearing regarding Kleser's treatment needs and the issue of deterrence. Both Dr. Beyer and Dr. Collins submitted assessments of Kleser. The court also heard testimony from the superintendent of Ethan Allen School for Boys, the operations director of the Mendota Juvenile Treatment Center, and the social services director of the Green Bay Correctional Institution, regarding the treatment options available at those facilities. Dr. Beyer's discussion of Kleser's treatment needs and susceptibility to deterrence—in both her hearing testimony and in her assessment of Kleser—included his alleged history of abuse, his diabetes, his impulsiveness and immaturity, specific reasons why Kleser can be rehabilitated, and his specific rehabilitation needs. Kleser presented additional expert testimony describing empirical research on the deterrent effect of punishing juveniles in the adult criminal justice system.

¶ 27. Kleser also presented evidence regarding the seriousness of the offenses. This included testimony of a detective from the Milwaukee Police Department who recalled what Kleser had told him about Adams, and an investigator from the State Public Defender's office who testified about his investigation of Adams. None of this testimony is at issue in this case and the State does not argue that it was inappropriately introduced at the reverse waiver hearing.

¶ 28. The evidentiary issues in this case focus on Dr. Beyer's testimony regarding the seriousness of the homicide offense. When Kleser's attorney asked Dr. Beyer, "Did [Kleser] act out of fear, out of rage, out of

anger?" Dr. Beyer responded: "My opinion of the [homicide] offense as [Kleser] described it was that it was a rage reaction when he was very fearful." Dr. Beyer then testified to Kleser's account of the homicide offense:

> [T]he night of this offense Corey reported drinking a huge amount of alcohol and in a drunken state answering the phone when the victim called and agreeing to pose for him in order to get money because Corey said he was broke. Corey reported that when he got to the apartment the usual scenario that he had with the victim unfolded, and he was surprised when the victim wanted to have sex. And Corey said that he did not want to, that he just wanted to pose and leave as he always had in the past.
>
> Corey reported that the victim attacked him and tried to rape him and that Corey's pants were down around his ankles so that he couldn't really move and that in the struggle where after the victim was on top of him, as they struggled, that he felt powerless, that the victim was choking him and that he felt that he couldn't breathe and that he was going to pass out, and that he grabbed a hammer and hit the victim until he could get out of the victim's grasp.

¶ 29. This account of the events paralleled the account described in Dr. Beyer's written assessment of Kleser:

> Corey said that night posing nude for the victim started as the same routine as it had previously. He was surprised when the victim said he wanted to have sex. Corey said he repeatedly said "No" and told the victim he was straight. Corey said the victim jumped on his back, attempting to rape him. Corey said they struggled, and the victim grabbed him around the neck and pressed him into the dresser. Corey said his pants were around his ankles, making him unable to move.

56

The victim was larger and had longer arms so Corey said he could not push him off. Corey said he could not breathe. He thought the victim would kill him. He saw a hammer within his reach and hit the victim but could not get out of his grasp. He hit him repeatedly until the victim fell. "I was scared of being raped. Never been scared for my life before. I was going to pass out. I couldn't reach him to hit him. Had to use the hammer. He kept lunging at me. I was defending myself. I was the victim."

¶ 30. On November 27, 2007, the circuit court filed a detailed 11–page Decision and Order granting reverse waiver to juvenile court.[6] The court found that (1) Kleser could not receive adequate treatment in the criminal justice system; (2) transferring jurisdiction to the juvenile court would not depreciate the seriousness of the offenses; and (3) retaining jurisdiction was not necessary to deter Kleser or other juveniles from committing the charged violations.

¶ 31. With regard to depreciating the seriousness of the homicide offense, the court cited Dr. Beyer's testimony that Kleser "acted out of fear and rage when he killed Ron Adams." The court cited at length Kleser's account of the homicide as described in Dr. Beyer's testimony. The court also relied on Kleser's statement to police that Adams wanted to have sex with him and attacked him, as well as the conclusion from a detective who investigated the crime scene that "Ron Adams' death appeared more personal in nature than what he usually sees." The court then described Adams' troubled personal life in support of Kleser's account. It further

---

[6] Just prior to issuing its reverse waiver order, the circuit court informed the parties that it would be dismissing the criminal complaints and ordering the State to file a separate delinquency petition.

noted Dr. Beyer's testimony regarding scientific evidence—that an adolescent can not operate with the maturity and judgment of an adult—lessened Kleser's culpability. The court concluded:

> Based on the evidence and the facts and circumstances of this case, I conclude that transferring jurisdiction to the juvenile court would not depreciate the seriousness of the offense. Corey Kleser killed Ron Adams out of rage and fear after Ron Adams tried to assault Corey. Corey Kleser did not go to Ron Adam's apartment that evening to kill him. His act was not cold-blooded or premeditated as we see in many cases in the criminal justice system; rather, his act stemmed precipitously from the trauma he endured his entire life.

¶ 32. The State filed a petition for an interlocutory appeal of the reverse waiver order. It also informed the circuit court that it would be filing a delinquency petition to preserve juvenile court jurisdiction before Kleser turned 17. On February 15, 2008, the court of appeals granted leave to appeal.

¶ 33. The court of appeals reversed the circuit court's order and remanded with directions. It first held that Wis. Stat. § 970.032(2) prohibited the admission of facts that contradicted those in the criminal complaint. *Kleser*, 316 Wis. 2d 825, ¶ 36. The court began by noting that the language of the statute did not specify the scope of relevant admissible evidence at a reverse-waiver hearing. *Id.*, ¶ 24. It went on to examine the statute's placement within § 970.032, concluding that the reverse waiver hearing was intended as the second part of a two-part process, along with the preliminary examination. *Id.*, ¶ 25. It held that it would be absurd to allow a defendant to stipulate to facts in the first part of the process and then challenge them in the second, and that the proper place for a juvenile's attack on the

charges was the preliminary hearing. *Id.*, ¶ 28. It also noted that findings such as those in this case leave the record in a contradictory state because they undermine the intent element of first-degree intentional homicide. *Id.* Finally, the court looked at the placement of § 970.032 within Wis. Stat. ch. 970, concluding that the reverse waiver hearing was intended to be a summary proceeding, not a trial. *Id.*, ¶ 32.

¶ 34. The court of appeals also addressed the State's argument that the circuit court erroneously exercised its discretion. It held that the circuit court erred by substantively relying on Dr. Beyer's hearsay testimony regarding Kleser's account of the homicide. *Id.*, ¶ 47. It concluded that, although Wis. Stat. § 970.032(2) does not specifically address hearsay, hearsay is prohibited unless specifically authorized. *Id.*, ¶ 46. The court declined to address the State's argument that Dr. Beyer offered impermissible opinion testimony, but noted that *State v. Jensen,* 147 Wis. 2d 240, 432 N.W.2d 913 (1988), and *State v. Haseltine,* 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984), which generally prohibit an expert from testifying as to the truthfulness of a witness, apply in a reverse waiver hearing. *Kleser,* 316 Wis. 2d 825, ¶ 51. The court also declined to address the circuit court's decision to prohibit the State's expert from interviewing Kleser regarding the facts of the offense. *Id.*, ¶ 52.

¶ 35. Kleser petitioned this court for review, which we granted on July 15, 2009.

## II. STANDARD OF REVIEW

¶ 36. The petitioner's first issue addresses the interpretation of Wis. Stat. § 970.032(2). Statutory interpretation presents a question of law that we review

de novo. *State v. Johnson,* 2009 WI 57, ¶ 22, 318 Wis. 2d 21, 767 N.W.2d 207.

¶ 37. The second issue relates to the circuit court's decision to transfer Kleser from criminal court to juvenile court. We review a court's decision to order reverse waiver for an erroneous exercise of discretion. *State v. Verhagen,* 198 Wis. 2d 177, 191, 542 N.W.2d 189, 193 (Ct. App. 1995). An appellate court will affirm a discretionary decision if the circuit court examined the relevant facts, applied a proper standard of law, and using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *Loy v. Bunderson,* 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982).

¶ 38. The State challenges several of the circuit court's evidentiary rulings. An appellate court will uphold evidentiary rulings in the same manner as other discretionary rulings. *State v. Walters,* 2004 WI 18, ¶¶ 13–14, 269 Wis. 2d 142, 675 N.W.2d 778; *State v. Pharr,* 115 Wis. 2d 334, 342, 340 N.W.2d 498 (1983). A circuit court erroneously exercises its discretion if it fails to apply a proper standard of law. We independently review whether the circuit court applied the proper standard of law. *City of Madison v. DWD,* 2003 WI 76, ¶ 10, 262 Wis. 2d 652, 659, 664 N.W.2d 584.

## III. DISCUSSION

¶ 39. This case requires us to take an in-depth look at the reverse waiver procedure for juveniles under Wis. Stat. § 970.032(2). In doing so, we are presented with three overriding questions. First, what evidence is admissible at a reverse waiver hearing? Second, did the

circuit court erroneously exercise its discretion when it transferred the defendant from criminal court to juvenile court? Third, is remand for a new reverse waiver hearing an appropriate course of action in this case? These questions slightly restate the issues that were argued to the court.

## A. History of Wis. Stat. §§ 938.183 and 970.032

¶ 40. The 1990s saw significant changes in Wisconsin's treatment of juvenile offenders. In 1994 the Wisconsin Legislature created a Juvenile Justice Study Committee (JJSC) "to examine the then-existing Children's Code codified in Wis. Stat. ch. 48" and "recommend suggestions for change in Wisconsin's legislation in response to increasing juvenile crime." *State v. Hezzie R.*, 219 Wis. 2d 848, 871, 580 N.W.2d 660 (1998) (citing Juvenile Justice Study Committee, *Juvenile Justice: A Wisconsin Blueprint for Change* 2 (January, 1995) [hereinafter JJSC Report]).

¶ 41. The JJSC issued its report in January 1995. The Executive Summary of the report outlined several principles on which its recommendations were grounded:

> The juvenile justice system should be better able to protect the public from violent juvenile offenders.
>
> The system should operate more efficiently through streamlining of processes and improved access to information by entities that work with juvenile delinquents.
>
> Intervention with juveniles should be earlier and more effective to prevent more serious criminal behavior.
>
> The concept of personal responsibility should be expanded and reinforced.

> Punishment and sanctions should be better tailored to match the seriousness of the juvenile's offense.
>
> A balance which promotes personal accountability, community protection and rehabilitation should be established.

JJSC Report, *supra* at 8.

¶ 42. The 1995 legislature acted on the JJSC Report, adopting a comprehensive revision of the Children's Code, renaming it the Juvenile Justice Code, and moving it from Chapter 48 to a new Chapter 938, next to the criminal code. 1995 Wis. Act. 77. Most of the act took effect on July 1, 1996. The most relevant part of the Juvenile Justice Code legislation—for this case—is the part giving adult criminal courts exclusive original jurisdiction over certain offenses alleged to have been committed by persons under the age of 18.

¶ 43. Prior to the 1995 revision, virtually all persons between the ages of 12 and 18 who violated the criminal law were subject to the delinquency jurisdiction and procedures of the juvenile court. Before December 25, 1993, the juvenile code allowed some juvenile offenders to be waived into adult court. For instance, the 1991–92 statutes provided in part:

> (1) If a child is alleged to have violated s. 940.01 or 940.02 on or after his or her 14th birthday or if a child is alleged to have violated any state criminal law on or after his or her 16th birthday, the child or district attorney may apply to the court to waive its jurisdiction under this chapter . . . [7]

Wis. Stat. § 48.18 (1991–92).

---

[7] Waiver procedure and criteria were set out in Wis. Stat. § 48.18(2)-(6) (1991–92):

> (2) The waiver hearing shall be brought on by filing a petition alleging delinquency drafted under s. 48.255 and a petition for

## ¶ 44. 1993 Wisconsin Act 98, effective December 25, 1993, amended Wis. Stat. § 48.18(1) to add several

waiver of jurisdiction which shall contain a brief statement of the facts supporting the request for waiver . . .

. . . .

(b) The child has the right to present testimony on his or her own behalf including expert testimony and has the right to cross-examine witnesses at the hearing . . .

(4) The judge shall determine whether the matter has prosecutive merit before proceeding to determine if it should waive its jurisdiction.

(5) If prosecutive merit is found, the judge, after taking relevant testimony which the district attorney shall present and considering other relevant evidence, shall base its decision whether to waive jurisdiction on the following criteria:

(a) The personality and prior record of the child, including whether the child is mentally ill or developmentally disabled, whether the child has been previously found delinquent, whether such delinquency involved the infliction of serious bodily injury, the child's motives and attitudes, the child's physical and mental maturity, the child's pattern of living, prior offenses, prior treatment history and apparent potential for responding to future treatment.

(b) The type and seriousness of the offense, including whether it was against persons or property, the extent to which it was committed in a violent, aggressive, premeditated or willful manner, and its prosecutive merit.

(c) The adequacy and suitability of facilities, services and procedures available for treatment of the child and protection of the public within the juvenile justice system, and, where applicable, the mental health system.

(d) The desirability of trial and disposition of the entire offense in one court if the juvenile was allegedly associated in the offense with persons who will be charged with a crime in circuit court.

(6) After considering the criteria under sub. (5), the judge shall state his or her finding with respect to the criteria on the record, and, if the judge determines on the record that it is established by clear and convincing evidence that it would be contrary to the best interests of the child or of the public to hear the case, the judge shall enter an order waiving jurisdiction and

additional offenses for which a juvenile *under the age of 16* could be waived into criminal court. More important, Act 98 created two new provisions of special relevance to this case, namely, Wis. Stat. §§ 48.183 and 970.032.[8]

¶ 45. New § 48.183 (1993–94) provided:

> Jurisdiction over children alleged to have committed assault or battery in a secured correctional facility. Notwithstanding ss. 48.12 (1) and 48.18, courts of criminal jurisdiction have *exclusive original jurisdiction* over a child who is alleged to have violated s. 940.20 (1) or 946.43 while placed in a secured correctional facility. Notwithstanding subchs. IV to VI, a child who is alleged to have violated s. 940.20 (1) or 946.43 while placed in a secured correctional facility is subject to the procedures specified in chs. 967 to 979 and the criminal penalties provided for those crimes, unless a court of criminal jurisdiction transfers jurisdiction under s. 970.032 to a court assigned to exercise jurisdiction under this chapter.

Wis. Stat. § 48.183 (1993–94) (emphasis added).

¶ 46. New Wis. Stat. § 970.032 (1993–94) read:

> (1) Notwithstanding s. 970.03, if a preliminary examination is held regarding a child who is accused of violating s. 940.20 (1) or 946.43 while placed in a secured correctional facility, as defined in s. 48.02(15m), the court shall first determine whether there is probable cause to believe that the child has committed a violation of s. 940.20 (1) or 946.43 while placed in a secured correctional facility, as defined in s. 48.02 (15m). If the court does not make that finding, the court shall order that the child be discharged but proceedings may be brought regarding the child under ch. 48.

referring the matter to the district attorney for appropriate criminal proceedings in the circuit court, and the circuit court thereafter has exclusive jurisdiction.

[8] 1993 Wisconsin Act 98 also amended Wis. Stat. § 48.18(5).

(2) If the court finds probable cause as specified in sub. (1), *the court shall determine whether to retain jurisdiction or to transfer jurisdiction to the court assigned to exercise jurisdiction under ch. 48.* The court shall retain jurisdiction unless the court finds all of the following:

(a) That, if convicted, the child could not receive adequate treatment in the criminal justice system.

(b) That transferring jurisdiction to the court assigned to exercise jurisdiction under ch. 48 would not depreciate the seriousness of the offense.

(c) That retaining jurisdiction is not necessary to deter the child or other children from committing violations of s. 940.20(1) or 946.43 or other similar offenses while placed in a secured correctional facility, as defined in s. 48 02 (15m).

Wis. Stat. § 970.032 (1993–94) (emphasis added).

¶ 47. In sum, 1993 Wis. Act 98 is the source of both (1) "exclusive original jurisdiction" over a juvenile in criminal court; and (2) the reverse waiver provision in the criminal code.

¶ 48. 1995 Wis. Act 77—the Act embodying many of the JJSC recommendations—was then passed. Among its myriad provisions, the Act (1) repealed Wis. Stat. § 48.183; (2) created a greatly expanded Wis. Stat. § 938.183 in place of § 48.183; and (3) also extended Wis. Stat. § 970.032.

¶ 49. Wisconsin Stat. § 938.183(1)(a) and (am) were amended again in 2006. 2005 Wis. Act 344, § 165. The changes were effective April 29, 2006. Consequently, at the end of 2006, paragraphs § 938.183(a) and (am) read as follows:

938.183 Original adult court jurisdiction for criminal proceedings. (1) JUVENILES UNDER ADULT

COURT JURISDICTION. Notwithstanding ss. 938.12 (1) and 938.18, courts of criminal jurisdiction have *exclusive original jurisdiction* over all of the following:

(a) A juvenile who has been adjudicated delinquent and who is alleged to have violated s. 940.20 (1) or 946.43 while placed in a juvenile correctional facility, a juvenile detention facility, or a secured residential care center for children and youth or who has been adjudicated delinquent and who is alleged to have committed a violation of s. 940.20 (2m).

(am) A juvenile who is alleged to have attempted or committed a violation of s. 940.01 or to have committed a violation of s. 940.02 or 940.05 on or after the juvenile's 10th birthday.

Wis. Stat. § 938.183 (emphasis added).

¶ 50. These are the exclusive original jurisdiction provisions that applied to Corey Kleser.

¶ 51. This brings us to Wis. Stat. § 970.032. At the end of 2006, this statutory section read in full:

Preliminary examination; juvenile under original adult court jurisdiction. (1) Notwithstanding s. 970.03, if a preliminary examination is held regarding a juvenile who is subject to the original jurisdiction of the court of criminal jurisdiction under s. 938.183 (1), the court shall first determine whether there is probable cause to believe that the juvenile has committed the violation of which he or she is accused under the circumstances specified in s. 938.183 (1) (a), (am), (ar), (b), or (c), whichever is applicable. If the court does not make that finding, the court shall order that the juvenile be discharged but proceedings may be brought regarding the juvenile under ch. 938.

(2) If the court finds probable cause to believe that the juvenile has committed the violation of which he or she is accused under the circumstances specified

in s. 938.183 (1) (a), (am), (ar), (b) or (c), the court shall determine whether to retain jurisdiction or to transfer jurisdiction to the court assigned to exercise jurisdiction under chs. 48 and 938. The court shall retain jurisdiction unless the juvenile proves by a preponderance of the evidence all of the following:

(a) That, if convicted, the juvenile could not receive adequate treatment in the criminal justice system.

(b) That transferring jurisdiction to the court assigned to exercise jurisdiction under chs. 48 and 938 would not depreciate the seriousness of the offense.

(c) That retaining jurisdiction is not necessary to deter the juvenile or other juveniles from committing the violation of which the juvenile is accused under the circumstances specified in s. 938.183 (1) (a), (am), (ar), (b) or (c), whichever is applicable.

Wis. Stat. § 970.032.

¶ 52. Wisconsin Stat. § 970.032 is the principal object of our interpretation in this case. The text of this statute has evolved since 1993 to accommodate the great expansion of "exclusive original jurisdiction." In addition, the procedure and criteria for reverse waiver clearly have roots in the statute on juvenile waiver.

B. Language of Wis. Stat. § 970.032

¶ 53. We begin our interpretation of Wis. Stat. § 970.032 with the language of the statute. *State ex. rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. Our examination of the language incorporates the statutory history of the section and the statutory history of related sections, as set out in ¶¶ 39–52, *supra,* to establish context.

¶ 54. When a juvenile under exclusive original jurisdiction is charged with one of the offenses set out

in Wis. Stat. § 938.183(1), the juvenile has a right to a preliminary examination. The juvenile may waive that right.

> [I]f a preliminary examination is held regarding a juvenile who is subject to the original jurisdiction of the court of criminal jurisdiction under s. 938.183(1), the court shall first determine whether there is probable cause to believe that the juvenile has committed *the violation* of which he or she is accused under the circumstances specified in s. 938.183(1)(a) [or] (am), . . . whichever is applicable.

Wis. Stat. § 970.032(1) (emphasis added).

¶ 55. A preliminary examination under § 970.032(1) is different from a preliminary examination under Wis. Stat. § 970.03(1). Under § 970.03(1), the statutory purpose of the hearing is to determine "if there is probable cause to believe *a felony* has been committed by the defendant." Wis. Stat. § 970.03(1) (emphasis added). The underlying purpose is "to protect the accused from hasty, improvident, or malicious prosecution and to discover whether there is a substantial basis for bringing the prosecution and further denying the accused his right to liberty." *State v. Williams,* 198 Wis. 2d 516, 527, 544 N.W.2d 406 (1996) (quoting *Bailey v. State,* 65 Wis. 2d 331, 344, 222 N.W.2d 871 (1974)).

¶ 56. In line with the text of § 970.03(1) and with its underlying purpose, the court need not find probable cause as to the *specific* felony charged in the complaint as long as the state presents enough evidence to establish probable cause to believe that *some* felony has been committed by the defendant and that the defendant should be bound over for trial. *See Wittke v. State ex rel. Smith,* 80 Wis. 2d 332, 352, 259 N.W.2d 515 (1977).

¶ 57. In contrast, under § 970.032(1), the court must determine whether there is probable cause to believe that the juvenile has committed "*the* violation" of which he or she is accused in the criminal complaint. This finding is required not only to protect the juvenile from hasty, improvident, or malicious prosecution, but also to assure that the criminal court has "exclusive original jurisdiction" of the juvenile by virtue of the juvenile's probable violation of one of the offenses enumerated in Wis. Stat. §§ 938.183(1)(a), (am), (ar), (b), or (c). The latter purpose is the more important purpose under this statute because "[i]f the court does not make *that finding,* the court *shall* order that the juvenile be discharged," although proceedings may be brought regarding the juvenile under Chapter 938. Wis. Stat. § 970.032(1) (emphasis added).

¶ 58. This narrow reading of Wis. Stat. § 970.032(1) creates a pleading problem for the state. In 1993 Wis. Act 98, newly created § 970.032(1) applied to only two offenses: Wis. Stat. §§ 940.20(1) and 946.43, corresponding to the two offenses in then § 48.183. In 1995 Wis. Stat. § 970.032(1) was made applicable to many additional offenses corresponding to the contents of newly created § 938.183(1). Today Wis. Stat. § 970.032(1) applies to *multiple* offenses incorporated into Wis. Stat. § 938.183(1)(a), (am), (ar), (b), or (c), including "any state criminal law" under certain circumstances. *See* Wis. Stat. § 938.183(1)(ar), (b), and (c).

¶ 59. Section § 938.183(1)(am) includes a juvenile "who is alleged to have attempted or committed a violation of s. 940.01." Significantly, Wis. Stat. § 940.01(2) spells out mitigating circumstances. These are affirmative defenses "which mitigate the offense to 2nd-degree intentional homicide under § 940.05." Wis. Stat. § 940.01(2). Paragraph (am) also applies to juve-

niles who allegedly commit a violation of Wis. Stat. § 940.02 (first-degree reckless homicide) or a violation of § 940.05 (second-degree intentional homicide).

¶ 60. The problem for the state is that if the court *must* find probable cause for the specific offense charged in the complaint, the defendant has a strong incentive and should have the right to attempt to negate that specific offense during the preliminary examination—to prevent the state from prevailing on the specific offense charged, or possibly, to deprive the criminal court of its "exclusive original jurisdiction."

¶ 61. Two examples will illustrate the point. In this case, the State charged Kleser with a violation of § 940.01(1), first-degree intentional homicide. Kleser waived his preliminary examination. If he had not waived his preliminary examination, he might have tried to introduce evidence of mitigating circumstances to move the charge from a violation of § 940.01(1) to a violation of § 940.05.

¶ 62. In a preliminary examination under Wis. Stat. § 970.032(1), a defendant should be able to introduce evidence in an effort to get the charge reduced. Correspondingly, the state should be able to amend the complaint to reflect the evidence adduced, if it desires to do so, rather than lose jurisdiction because it has failed to establish probable cause of "the violation" charged. *See* Wis. Stat. § 971.29(1).

¶ 63. It must be recognized that if the state establishes probable cause to believe that the defendant has violated either Wis. Stat. §§ 940.01(1) or 940.05, the criminal court would still have exclusive original jurisdiction over the juvenile.

¶ 64. The second example is more problematic. Suppose the state charged a juvenile with *first*-degree *reckless* homicide. Wis. Stat. § 940.02(1) ("Whoever

70

recklessly causes the death of another human being under circumstances which show utter disregard for human life"). This statute is one of the offenses listed in § 938.183(1)(am), and the criminal court is given "exclusive original jurisdiction" over a juvenile charged with this offense if the juvenile was 10 years old at the time of the offense. In contrast, *second*-degree reckless homicide ("Whoever recklessly causes the death of another human being") is *not* one of the offenses enumerated in § 938.183(1)(am) and does *not* give the criminal court "exclusive original jurisdiction" over the juvenile. Hence, if the court were to find probable cause to believe that the juvenile violated § 940.06 but not § 940.02, the statute would require the court to "order that the juvenile be discharged," Wis. Stat. § 970.032(1), subject to a new proceeding under Chapter 938, because the court did not find probable cause for "the violation" charged and the state could not amend the charge and still qualify under § 938.183(1)(am).

¶ 65. The point is that because the preliminary examination under Wis. Stat. § 970.032(1) is quite different from the preliminary examination under § 970.03, the defendant *must* be given some latitude in attacking the specific offense charged if a successful attack would alter the crime charged or negate the exclusive original jurisdiction of the criminal court.

¶ 66. In this case, the defendant waived his preliminary examination. As a result, the circuit court found probable cause to believe that Kleser had committed a first-degree intentional homicide under Wis. Stat. § 940.01(1). We see no basis for contradicting that finding after the preliminary examination except at trial. When Kleser waived his preliminary examination,

he conceded the State's right to try him for first-degree intentional homicide, either in criminal court or in juvenile court.

¶ 67. This brings us to the reverse waiver procedure set out in Wis. Stat. § 970.032(2). This procedure gives a juvenile under adult court jurisdiction an opportunity to prove that *notwithstanding* the court's finding of probable cause of the offense or offenses charged, the juvenile's case should be transferred to juvenile court for disposition. To achieve this objective, the burden is upon the juvenile to prove by a preponderance of the evidence all three elements outlined in subsection (2).

¶ 68. Subsection (2)(b) requires the juvenile to prove that transferring jurisdiction to juvenile court "would not depreciate the seriousness of the offense." This requirement, by its very nature, suggests that § 970.032(2) permits the juvenile to supplement the facts offered by the state about the charged offense so that the criminal court is able to evaluate the "seriousness of the offense" in considering reverse waiver. Stated differently, the purpose of permitting additional factual evidence is not to contradict the previous finding of probable cause for "the violation" but rather to put the established "violation" in a factual context in an effort to prove that transferring jurisdiction to juvenile court would not depreciate the seriousness of that offense.

¶ 69. Nothing in § 970.032(2) places a limitation on the evidence at a reverse waiver hearing so long as the evidence is admissible under the rules of evidence and is relevant to one or more of the three elements set out in the subsection. Having said that, it appears to us that the legislature did not intend the reverse waiver hearing to be a minitrial. Accordingly, the court has authority to control the admission of evidence to assure

72

that a juvenile adheres to the statutory scheme—such as recognition of "the violation" already established—and to prevent the hearing from consuming unnecessary time and resources.

¶ 70. The State argues that in a reverse waiver hearing, the evidence with respect to "the seriousness of the offense" should be limited to the specific facts brought out at the preliminary examination or stated in the complaint. We are unable to agree. *State v. Dominic E.W.*, 218 Wis. 2d 52, 579 N.W.2d 282 (Ct. App. 1998), sheds light on this contention.

¶ 71. In *Dominic E.W.*, the circuit court ordered reverse waiver on a charge of battery to a correctional officer. *Id.* at 55. The circuit court considered various factors regarding the "seriousness of the offense," including the fact that Dominic's battery was neither premeditated nor confrontational and that Dominic had few, if any, behavioral issues prior to the battery. *Id.* at 57–58. In a footnote, the court of appeals noted:

> The State takes issue with the trial court's consideration of the seriousness of the offense. The State seeks to equate all batteries from misdemeanor battery to a battery causing substantial bodily harm as equally serious and exposing vulnerable officers to increased violence. As with the first criterion, the court must decide under the specific facts and circumstances of the case how serious the offense was—whether it was an egregious type of battery, like the "vicious major attack" in *State v. Verhagen*, 198 Wis. 2d 177, 192–93, 542 N.W.2d 189, 193–94 (Ct. App. 1995), or some lesser type of battery. Again, such weighing of the facts by the trial court is implicit in the reverse waiver statute.

*Id.* at 58 n.6.

¶ 72. *Dominic E.W.* noted that the determination of seriousness is based on "the specific facts and circum-

stances of the case" and that "weighing of the facts by the trial court is implicit in the reverse waiver statute." *Id.* We believe this interpretation is correct. *Dominic E.W.* did not address whether the weighing is restricted to the facts used to establish probable cause, but the discussion implicates a more expansive interpretation of the word "offense" than that offered by the State. We see nothing in the plain language of § 970.032(2) that precludes the admission of evidence supplementing the facts used to establish probable cause, as long as the evidence is offered for the limited and proper purpose of proving that (1) if convicted, the juvenile could not receive adequate treatment in the criminal justice system; (2) transferring jurisdiction to juvenile court would not depreciate the seriousness of the offense; and (3) retaining jurisdiction is not necessary to deter the juvenile or other juveniles from committing the violation of which the juvenile is accused.

¶ 73. We believe Wis. Stat. § 938.18, which sets out the procedure for *waiver* of a juvenile *into* adult court, was a model for Wis. Stat. §§ 970.032(2) and supports our interpretation of it.

¶ 74. As mentioned previously in ¶¶ 43–44, *supra,* Wisconsin law provided a mechanism for waiver of a juvenile into adult court long before the present reverse waiver procedure was adopted. Under the current version of the waiver statute, a juvenile may be waived into adult court if the juvenile is alleged to have (1) committed certain felonies after the juvenile's 14th birthday; (2) committed a violation at the request or for the benefit of a gang after the juvenile's 14th birthday; or (3) violated any criminal law after the juvenile's 15th birthday. Wis. Stat. § 938.18(1) (2007–08). In these circumstances, the juvenile or the district attorney may file a petition for waiver. Wis. Stat. § 938.18(2).

¶ 75. The procedure employed and criteria established for waiver into criminal court under § 938.18 (2007–08) are more detailed than the procedure and criteria [elements] for reverse waiver to juvenile court under § 970.032(2). Nevertheless, the parallels are too obvious to ignore.

¶ 76. First, § 938.18(4) (2007–08) requires the juvenile court to determine whether the petition ("the matter") has prosecutive merit before proceeding to determine if it should waive jurisdiction. Wis. Stat. § 938.18(4)(a). The statute then specifies: "If a petition for waiver of jurisdiction is contested, the district attorney *shall* present relevant testimony and the court, after taking that testimony and considering other relevant evidence, shall base its decision whether to waive jurisdiction on the criteria specified in [§ 938.18(5)]." Wis. Stat. § 938.18(4)(b) (emphasis added).

¶ 77. Second, § 938.18(3) (2007–08) sets out a juvenile's rights at a waiver hearing. It specifies that the juvenile has the right to counsel and provides specific notice requirements for the hearing. *Id.* The statute then provides: "The juvenile has the right to present testimony on his or her own behalf *including expert testimony* and has the right to cross-examine witnesses." Wis. Stat. § 938.18(3)(b) (emphasis added).

¶ 78. Third, Wis. Stat. § 938.18(5) (2007–08) provides more detailed criteria to consider in determining waiver than is set out in Wis. Stat. § 970.032(2). These criteria include the personality of the juvenile, prior record of the juvenile, adequacy and suitability of treatment facilities, services, and procedure, and desirability of trial and disposition of the entire offense in one court. Wis. Stat. § 938.18(5). Although each of these criteria is described in detail, one factor is particularly

relevant to the inquiry in this case: "The type and *seriousness of the offense,* including whether it was against persons or property and the extent to which it was committed in a violent, aggressive, premeditated or willful manner." Wis. Stat. § 938.18(5)(b) (emphasis added).

¶ 79. Fourth, § 938.18(6) (2007–08) requires that the court state its "finding" with respect to the waiver criteria on the record and waive jurisdiction "if the court determines on the record that there is clear and convincing evidence that it is contrary to the best interests of the juvenile or of the public to hear the case." Wis. Stat. § 938.18(6). The burden is on the state to prove the case for waiver by clear and convincing evidence. *Id.*

¶ 80. Both the state and the juvenile are accorded broad latitude to present their respective positions in a waiver hearing. In a contested hearing, the state is given the right to "present relevant testimony," which the court must consider along with "other relevant evidence" when deciding whether the waiver criteria have been met. Wis. Stat. § 938.18(4)(b) (2007–08). The juvenile also may present evidence, including expert testimony. Wis. Stat. § 938.18(3)(b). The statute's reference to the "type and seriousness of the offense" requires the court to consider the facts surrounding the alleged offense. Wis. Stat. § 938.18(5)(b). Taken together, these provisions suggest a broad scope of inquiry at a waiver hearing.

¶ 81. We recognize that Wis. Stat. § 938.18 (2007–08) and Wis. Stat. § 970.032(2) address different proceedings. The fact that the legislature included certain details in § 938.18 that it did not include in § 970.032(2) gives rise to a plausible inference that it did not intend to include all the details of one inquiry in

the other. Nonetheless, we think such an interpretation would lead to an unreasonable result.

¶ 82. Wisconsin Stat. §§ 938.18 (2007–08) and 970.032(2) provide for essentially analogous procedures. The primary distinction between the two is in the allocation of burden. The state must prove the case for waiver by "clear and convincing evidence." Wis. Stat. § 938.18(6). The juvenile must prove reverse waiver by "preponderance of the evidence." Wis. Stat. § 970.032(2). It does not make sense to us that the legislature would permit the state to present all necessary evidence at a juvenile waiver hearing to meet its burden, but tie the hands of a juvenile in a reverse waiver hearing so that the juvenile did not have an equal opportunity to meet his burden in a comparable situation.

¶ 83. "Waiver of juvenile court jurisdiction is a 'critically important' decision that entails depriving the juvenile and the public of the substantial protections the juvenile court system provides to the juvenile accused of committing a crime." *T.R.B. v. State,* 109 Wis. 2d 179, 190–91 325 N.W.2d 329 (1982) (quoting *Kent v. United States,* 383 U.S. 541, 553, 556–57 (1966)). Reverse waiver is not less important to the juvenile offender or the community. We decline to interpret § 970.032(2) in a way that unduly restricts the juvenile's ability to meet his burden.

■

¶ 84. We conclude that the juvenile must be given reasonable latitude to offer admissible evidence for the purpose of meeting his burden to prove the three elements for reverse waiver under Wis. Stat. § 970.032(2). This includes evidence of "the violation" or the offense charged that supplements the facts used to establish probable cause. Stated differently, the defendant may offer additional factual evidence to put "the offense" in

context so that the court can make an informed judgment on whether transferring the matter to juvenile court would "depreciate the seriousness of the offense." However, the juvenile may not offer evidence for the purpose of contradicting the offense charged because that offense has already been established in the preliminary examination.

## C. Erroneous Exercise of Discretion

¶ 85. We next address whether the circuit court erroneously exercised its discretion in granting the reverse waiver to juvenile court. The State points to three different grounds on which the circuit court erroneously exercised its discretion. First, it argues that the circuit court substantively relied on hearsay testimony presented by Dr. Beyer. Second, it argues that the circuit court erred by permitting Dr. Beyer to imply that she believed Kleser's account of the offense was truthful. Third, it argues that the circuit court erred by allowing Dr. Beyer to testify as to Kleser's account of the offense while prohibiting the State's expert, Dr. Collins, from interviewing Kleser regarding the offense. The court of appeals held that the circuit court erred by substantively relying on hearsay, but did not address the two other issues. *Kleser,* 316 Wis. 2d 825, ¶¶ 47, 51–52.

¶ 86. We agree with the court of appeals that Dr. Beyer's testimony regarding the facts of the offense constituted inadmissible hearsay and that the circuit court improperly relied upon it. We also hold that Dr. Beyer's testimony constituted improper vouching testimony. Finally, we hold that the circuit court erred by allowing Dr. Beyer to testify regarding Kleser's descrip-

tion of the offense while prohibiting Dr. Collins from interviewing Kleser regarding the offense.

## 1. Substantive Reliance on Hearsay

¶ 87. Kleser argues that the court of appeals incorrectly held that the circuit court erred by substantively relying on Dr. Beyer's hearsay testimony. Kleser concedes that "to the extent the trial court relied upon inadmissible hearsay, it erred." He reasons, however, that this error was harmless because other evidence in the record supported the circuit court's conclusion that Kleser acted out of rage and fear when he killed Adams.

¶ 88. The admissibility of evidence at a reverse waiver hearing is subject to the rules of evidence. "Chapters 901 to 911 [the rules of evidence] govern proceedings in the courts of the state of Wisconsin except as provided in ss. 911.01 and 972.11." Wis. Stat. § 901.01. Wisconsin Stat. § 911.01(2) provides that the rules of evidence "apply generally to proceedings in civil and criminal actions." Wisconsin Stat. § 911.01(4) then enumerates a list of situations in which the rules of evidence do not apply. Because a reverse waiver hearing is not listed as one of the specific circumstances in which the rules of evidence do not apply, we see no reason why the rules do not apply at a reverse waiver hearing.

¶ 89. Wisconsin Stat. § 972.11(1) also provides that "the rules of evidence and practice in civil actions shall be applicable in all criminal proceedings unless the context of a section or rule manifestly requires a different construction." Nothing in Wis. Stat. § 970.032(2) manifestly requires a different construction. Against this background, the court of appeals correctly held that "[w]here a statute does not specifi-

79

cally authorize hearsay, it is generally prohibited." *Kleser,* 316 Wis. 2d 825, ¶ 46 (citing Wis. Stat. § 908.02). The rules of evidence, including the general prohibition on hearsay, apply to reverse waiver hearings.

■

¶ 90. Because the general prohibition on hearsay applies to reverse waiver hearings, we conclude that Dr. Beyer's testimony regarding *the facts of the offense* was inadmissible and that the circuit court erred in relying upon it. Dr. Beyer, both in her testimony at the hearing and in her assessment of Kleser, extensively described the facts of the offense. Her assessment described the events of the night, prefacing these events with: "Kleser said . . . " Her testimony at the hearing regarding the events surrounding the homicide was in response to Kleser's attorney's request, "if you could explain *what happened* that night as far as you understand it." (Emphasis added.) Thus, Dr. Beyer's testimony was presented in terms of what actually happened. Kleser, however, did not take the stand, and there is no suggestion that Dr. Beyer had personal knowledge of the events.

¶ 91. We note that Dr. Beyer used Kleser's description of the offense to formulate her opinion that Kleser acted out of rage and fear. An expert may rely on inadmissible evidence in formulating an opinion, if the evidence is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Wis. Stat. § 907.03. Even assuming that Kleser's hearsay was reasonably relied upon by an expert in Dr. Beyer's field, Wis. Stat. § 907.03 is not a hearsay exception, *State v. Weber,* 174 Wis. 2d 98, 107, 496 N.W.2d 762 (Ct. App. 1993), and it does not render the underlying inadmissible testimony admissible, *see*

*State v. Watson,* 227 Wis. 2d 167, 199, 595 N.W.2d 403 (1999). By allowing Dr. Beyer to present Kleser's description of the offense, the court permitted Dr. Beyer to act as a conduit for inadmissible hearsay.[9] This type of testimony is prohibited by the rules of evidence. *See State v. Coogan,* 154 Wis. 2d 387, 399, 453 N.W.2d 186 (Ct. App. 1990) (holding that an expert may not "act as a conduit for inadmissible evidence").

¶ 92. Kleser appears to argue that admission of this hearsay evidence was appropriate because it was used for the limited purpose of determining whether the transfer would depreciate the seriousness of the offense. We disagree. Although Kleser's brief accurately

---

[9] There is no dispute that the court was permitted to consider Dr. Beyer's *opinion* and that Dr. Beyer's opinion could be based on inadmissible evidence. *See* Wis. Stat. § 907.03. But this does not permit the court to rely on the underlying inadmissible evidence. In *State v. Watson,* this court warned that "[t]he danger in permitting inadmissible hearsay to serve as the basis for expert opinions is that hearsay may reach the trier of fact through 'the back door' of cross-examination if experts are asked to explain the bases for their opinions." *State v. Watson,* 227 Wis. 2d 167, 199, 595 N.W.2d 403 (1999). Professor Daniel Blinka has stated that "it cannot be gainsaid that Wis. Stat. § 907.03 is *not* a hearsay exception." 7 Daniel D. Blinka, Wisconsin Practice Series: Wisconsin Evidence § 702.604, at 622. He contrasts the federal rule permitting the otherwise inadmissible bases to go before a jury, which "creates some horrendous difficulties," with Wisconsin's rule that entrusts the circuit court with discretion. Even when the circuit court uses its discretion, it may allow inadmissible bases for expert opinions into evidence only "subject to a limiting instruction informing the jury that (if hearsay) the basis may not be used for substantive purposes." *Id.* at 624. This rule, applied when the judge is the trier of fact, prohibits the judge (as fact-finder) from relying on the substance of the inadmissible hearsay.

describes the ultimate issue for which the evidence was presented, there is no question that Dr. Beyer's testimony was presented for the truth of the matter asserted. *See* Wis. Stat. § 908.01(3) ("hearsay" is an out-of-court statement made by a person not testifying at a trial or hearing, offered at a trial or hearing "to prove the truth of the matter asserted").[10] Although the circuit court was asked to make a narrow legal determination about the seriousness of the offense, the court's determination was based on the purported "facts" of the offense as Dr. Beyer described them. Dr. Beyer acted as a conduit through which Kleser put these facts into evidence.

¶ 93. We have previously determined that details of the offense may be relevant to a determination of whether, under Wis. Stat. § 970.032(2), transferring jurisdiction of the case to juvenile court would depreciate the seriousness of the offense. These details, however, may reach the trier of fact only in accordance with the rules of evidence, whether through the testimony of the defendant, the testimony of another person with personal knowledge of the events, or a recognized exception to the hearsay rule.

■

¶ 94. Kleser contends that the court's reliance on any inadmissible hearsay constituted harmless error. Again, we disagree. An error will not warrant reversal if the error does not affect the substantial rights of the adverse party. Wis. Stat. § 805.18; *see State v. Lindell,* 2001 WI 108, ¶ 69, 245 Wis. 2d 689, 629 N.W.2d 223

---

[10] The fact that Dr. Beyer's testimony was used for the truth of the matter asserted is emphasized by the fact that her testimony was provided in response to Kleser's attorney's request to "explain *what happened* that night as far as you understand it." (Emphasis added.)

(harmless error statute applies in criminal proceedings). An error affects the substantial rights of a party if there is a reasonable probability of a different outcome, meaning a "probability sufficient to undermine confidence in the outcome." *State v. Dyess,* 124 Wis. 2d 525, 545, 370 N.W.2d 222 (1985) (quoting *Strickland v. Washington,* 466 U.S. 668 (1984)).

■■■■

¶ 95. A reasonable probability exists that the outcome would have been different without Dr. Beyer's hearsay testimony for two reasons. First, the circuit court clearly used Dr. Beyer's testimony as a basis for its findings. The court found that "Corey Kleser killed Ron Adams out of rage and fear after Ron Adams tried to assault [Kleser]." This finding closely parallels Dr. Beyer's testimony that the offense "was a rage reaction when [Kleser] was very fearful," as well as the account provided in Dr. Beyer's assessment of Kleser.

¶ 96. More important, Dr. Beyer's hearsay testimony and hearsay in her assessment of Kleser were the principal bases for the circuit court's finding that Kleser acted out of fear and rage, which in turn was the basis for her conclusion that transferring jurisdiction would not depreciate the seriousness of the offense.[11] Kleser points to the circuit court's reliance on Kleser's statement to the police and a detective's testimony regarding the personal nature of the crime. These additional facts, by themselves, are not an adequate basis for the circuit

---

[11] Dr. Beyer's testimony closely parallels her written report. Dr. Beyer testified on November 6, 2007. Detective Louis Johnson, who interviewed Kleser, and Lieutenant Terrence Gordon, who investigated the crime scene, did not testify until the following day. Consequently, Dr. Beyer could not and did not rely on Detective Johnson's testimony as a basis for her testimony.

court's conclusion that Kleser acted out of fear and rage.[12] In light of the close parallels between the circuit court's decision and Dr. Beyer's testimony, it is clear that the testimony of the officers played a relatively minor role in the court's conclusion that Kleser acted out of fear and rage, compared to Dr. Beyer's testimony.

¶ 97. Kleser argues that the court exercised its discretion properly, even without the erroneous bases for its decision, because "there is no requirement that the court consider one factor more than any others." While this is true, the reverse waiver statute requires the juvenile to prove *each* of the three elements by preponderance of the evidence. Wis. Stat. § 970.032(2) (requiring the juvenile to prove by preponderance of the evidence "all of the following"). If the juvenile fails to prove one of these elements, the court cannot grant the reverse waiver, no matter how compelling the other two elements may be. Based on the circuit court's decision, it is clear that without Dr. Beyer's hearsay testimony, Kleser would not have sustained his burden of proving that transferring jurisdiction would not depreciate the seriousness of the offense. Therefore, the court erroneously exercised its discretion in granting reverse waiver.

---

[12] Although Detective Johnson testified regarding his interview with Kleser, the circuit court did not rely on this testimony in its decision. In the decision, virtually the entire description of the facts of the offense was taken from Dr. Beyer's written report.

As noted repeatedly, the burden of proof is on the defendant in a reverse waiver hearing. We can only speculate what would have transpired if Dr. Beyer had given nothing more than her opinion. The State might not have called Detective Johnson to testify, or it might have attempted to limit the detective's testimony in cross-examination. The admission of Dr. Beyer's hearsay testimony of Kleser's version of the offense changed the hearing.

## 2. Dr. Beyer's Testimony Regarding Kleser's Truthfulness

¶ 98. We next address whether the circuit court erred by relying on Dr. Beyer's testimony as to the truthfulness of Kleser's hearsay. The State argues that this testimony violated the principles articulated in *Jensen,* 147 Wis. 2d 240, and *Haseltine,* 120 Wis. 2d 92. The court of appeals did not address this issue but assumed that *Jensen* and *Haseltine* would apply in a reverse waiver hearing. *Kleser,* 316 Wis. 2d 825, ¶ 51. We agree with the court of appeals that the principles articulated in those cases apply, and hold that the circuit court erred by relying on Dr. Beyer's impermissible vouching testimony.

¶ 99. In *Haseltine,* the defendant was charged with sexual contact with his daughter. *Haseltine,* 120 Wis. 2d at 93. The state presented testimony of a psychiatrist who opined that there "was no doubt whatsoever" that the daughter was an incest victim. *Id.* at 96. The court of appeals held that this testimony was impermissible vouching testimony because a jury can determine credibility without the help of expert opinion. *Id.* at 96. It explained:

> The opinion that Haseltine's daughter was an incest victim is an opinion that she was telling the truth. There is no indication that Haseltine's daughter had any physical or mental disorder that might affect her credibility. No witness, expert or otherwise, should be permitted to give an opinion that another mentally and physically competent witness is telling the truth.

*Id.* (citations omitted).

¶ 100. In *Jensen,* the defendant was charged with sexually assaulting his stepdaughter, L.J. *Jensen,* 147 Wis. 2d at 243. The state called the guidance counselor

at L.J.'s school, who testified that L.J.'s behavior in school was consistent with children who were the victims of sexual abuse. *Id.* at 247. The defendant argued that this testimony was inadmissible for several reasons, one of which was that it amounted to testimony about whether L.J. was telling the truth. *Id.* at 249. The court disagreed. It held that the testimony did not constitute impermissible vouching evidence, but was instead offered to (1) explain the context in which L.J. told the guidance counselor about the assault; and (2) rebut the defense's theory that L.J. fabricated the charges. *Id.* at 250. Because a sexual assault victim's behavior "may not conform to commonly held expectations of how a victim reacts to sexual assault," such expert testimony may be helpful to a jury. *Id.* at 252.

¶ 101. We agree with the State that Dr. Beyer's account of the homicide offense here cannot be distinguished from the core principles of *Jensen* and *Haseltine*. Dr. Beyer testified: "My opinion of the offense as [Kleser] described it was that it was a rage reaction when he was very fearful." While she did preface many of her statements with "Kleser reported," she also described the offense in response to defense counsel's request that she "explain what happened that night *as far as you understand it.*" (Emphasis added.)

¶ 102. We are not persuaded that the vouching rule becomes inapplicable simply because a witness does not use specific words such as "I believe X is telling the truth," or is inapplicable because X never testified as a witness. There is no requirement that an expert *explicitly* testify that she believes a person is telling the truth for the expert's opinion to constitute improper vouching testimony. In *Haseltine,* for example, the expert testified only implicitly that the victim was telling the truth. *Haseltine,* 120 Wis. 2d at 96. A re-

quirement that specific words be used would permit the rule to be circumvented easily.

¶ 103. Nor is there any reason to exclude the *Haseltine* rule in situations where a person like Kleser, whose story is vouched for by a witness, never actually testifies. Permitting a witness to testify, implicitly or explicitly, that hearsay is true would aggravate an already bad situation.

¶ 104. The essence of the rule prohibiting vouching testimony is that such testimony invades the province of the fact-finder as the sole determiner of credibility. *Id.* ("The credibility of a witness is ordinarily something a lay juror can knowledgeably determine without the help of an expert opinion."). This concern applies even when the expert vouches for the credibility of someone who does not testify. When the evidence vouched for is a hearsay declaration, the fact-finder has already been deprived of the opportunity to personally witness the declarant's testimony. Allowing an expert to present hearsay testimony *and* then give an opinion as to the credibility of that hearsay invades the province of the fact-finder even more than allowing an expert to testify to the credibility of an in-court witness. In sum, the principles underlying the rule from *Jensen* and *Haseltine* apply where an expert vouches for an out-of-court declarant.

¶ 105. Dr. Beyer had no specialized ability to assess the truthfulness of Kleser's account.[13] Although she described the events of the offense, there is no

---

[13] The Arizona Supreme Court has explained: "Psychologists and psychiatrists are not, and do not claim to be, experts at discerning truth. Psychiatrists are trained to accept facts provided by their patients, not to act as judges of patients'

question that she had no personal knowledge of those events. Thus, her testimony impermissibly suggested both that she believed Kleser's account and that the events actually unfolded as Kleser had portrayed them.[14]

¶ 106. Kleser suggests that the State's vouching argument is essentially indistinguishable from its argument that Dr. Beyer's testimony was hearsay, because both are premised on the fact that Dr. Beyer acted as a "conduit" for Kleser's testimony. As we see it, Dr. Beyer's objectionable testimony was inadmissible for two distinct reasons: (1) because it was hearsay; and (2) because Dr. Beyer implicitly vouched for that hearsay. Thus, her description of what Kleser said was inadmissible for one reason, and her explanation of what happened the night of the events, which implied that Dr. Beyer believed what Kleser said, is inadmissible for another reason.

¶ 107. Finally, Kleser argues that, if the circuit court erred by relying upon Dr. Beyer's opinion as to the truthfulness of the statements, such error was harmless. Although we are unable to ascertain fully what weight the circuit court gave to Dr. Beyer's implied vouching of Kleser, the court clearly relied on the

credibility." *State v. Moran,* 728 P.2d 248, 255 (Ariz. 1986) (citing *People v. Bledsoe,* 681 P.2d 291, 300 (Cal. 1984)).

[14] In other words, besides implicitly testifying that she believed Kleser's description, Dr. Beyer also testified that certain events, of which she did not have personal knowledge, occurred. Such testimony is clearly impermissible. Wis. Stat. § 906.02 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

testimony enough to believe that the story was true. Therefore, the circuit court's reliance on Dr. Beyer's inadmissible vouching testimony was not harmless error.

3. Refusal to Allow the State's Expert to Interview Kleser Regarding the Facts of the Offense

¶ 108. We next address whether the circuit court erred by allowing Dr. Beyer to testify as to the facts of the homicide offense without permitting the State's expert, Dr. Collins, to examine Kleser regarding the facts of the offense. Kleser argues that the circuit court's decision, attempting to balance the State's interests against Kleser's privilege against self-incrimination, was within the circuit court's discretion, particularly in light of the fact that there was no established law for the circuit court to follow.

¶ 109. We conclude that the circuit court erroneously exercised its discretion by refusing to allow Dr. Collins to interview Kleser regarding the facts of the offense. In reaching this conclusion, we conclude first that Kleser waived his privilege against self-incrimination by putting his account of the offense into issue through his expert. We conclude second that principles of fair play entitled the State to an opportunity to rebut Kleser's uncorroborated account of the offense.

¶ 110. This court addressed a defendant's waiver of the privilege against self-incrimination in *State v. Davis,* 2002 WI 75, 254 Wis. 2d 1, 645 N.W.2d 913. In *Davis,* this court addressed whether a defendant may present *Richard A.P.* testimony, which is "expert testimony to show that the defendant lacks the characteristics of a sexual offender and is therefore unlikely to

have committed the alleged sexual assault." *Id.*, ¶ 9.[15] After setting out the requirements for the admission of *Richard A.P.* evidence, the court focused on whether a defendant who intends to introduce *Richard A.P.* evidence waives his privilege against self-incrimination and may be compelled to undergo an examination by the state's expert. *Id.*, ¶ 27.

¶ 111. The court looked at two approaches to the issue of whether a defendant may be compelled to undergo an examination by a state expert. The court noted that some courts conclude that a compulsory examination is constitutionally permissible, not because the defendant has waived the right to be free from self-incrimination, but because the state must be afforded the same opportunity to obtain the type and quality of psychological evaluation as the defendant when the defendant raises the issue of his mental capacity. *Id.*, ¶ 34. "The overriding concern in such cases is that the finder of fact must be given a fair and full assessment of the defendant's culpability when the defendant raises this issue." *Id.* In contrast, other courts have held that a compulsory examination by the state is permissible because the defendant has *waived* the privilege against self-incrimination by showing his intent to introduce expert psychiatric testimony in support of a defense related to his mental capacity. *Id.*, ¶ 35.

¶ 112. The *Davis* court approved *State v. Briand,* 547 A.2d 235 (N.H. 1988), a New Hampshire case involving a defendant who raised battered woman's syndrome, to conclude that a compulsory examination

---

[15] The name of this evidence derives from *State v. Richard A.P.,* 223 Wis. 2d 777, 791, 589 N.W.2d 674 (Ct. App. 1998), in which the court of appeals permitted an expert to testify that the defendant "did not show any evidence of any diagnosable sexual disorder."

could occur only after the defendant waived her right against self-incrimination. *Davis*, 254 Wis. 2d 1, ¶ 36. The *Davis* court quoted the New Hampshire court:

> Because the expert's testimony is thus predicated on the defendant's statements, the latter are explicitly or implicitly placed in evidence through the testimony of the expert during his direct and cross-examination. Since a defendant would waive his privilege against compelled self-incrimination if he took the stand and made those same statements himself, his decision to introduce his account of relevant facts indirectly through an expert witness should likewise be treated as a waiver obligating him to provide the same access to the State's expert that he has given to his own.

*Id.*, ¶ 36 (quoting *Briand,* 547 A.2d at 239).

¶ 113. The court held that Davis did not waive his right simply by presenting *Richard A.P.* evidence, because such evidence was not a direct challenge to an element of the crime. *Id.*, ¶ 37. But the court, echoing *Briand,* held that waiver may occur if the introduction of evidence amounts "to nothing more than the defendant's own denial of the crime through a surrogate." *Id.*, ¶ 39.

¶ 114. The facts of this case are closer to *Briand* than to *Davis*, in that Kleser waived his privilege against self-incrimination by putting his account of the offense into issue through his expert. We find *Davis's* explanation of the circumstances in which a defendant (introducing *Richard A.P.* evidence) waives his privilege against self-incrimination to be particularly apt here:

> If [the defendant's] disclosure statement shows that the expert will either explicitly or implicitly provide testimony regarding relevant facts surrounding the alleged crime that amounts to the defendant's own denial of the

crime, the court may then order the defendant to undergo a reciprocal examination from the state based on the fact that the defendant has waived his or her right against self-incrimination. In this way, the defendant is permitted to introduce expert opinion testimony pursuant to *Richard A.P.* but restricted from introducing statements that amount to nothing more than the defendant's own statements on the crime.

*Id.*, ¶ 40.

¶ 115. Kleser argues that this reasoning from *Davis* is not applicable because *Davis* specifically pertained to *Richard A.P.* evidence as it implicated the defendant's guilt or innocence. We disagree. Although the issue at a reverse waiver hearing is not guilt or innocence, we see no reason why a different rule should apply when the defendant is seeking reverse waiver under Wis. Stat. § 970.032(2). The reasoning from *Davis* is not limited to cases where the defendant was presenting *Richard A.P.* evidence to prove his innocence. Rather, the relevant inquiry from *Davis* is whether "the defendant uses the expert as a surrogate to assert his or her own statements about facts on the crime and thereby waives the right against self-incrimination." *Davis,* 254 Wis. 2d 1, ¶ 3. In *Davis,* because the expert evidence was "circumstantial evidence of [the defendant's] innocence," the state could adequately rebut the testimony without a reciprocal examination.[16] *Id.*, ¶ 38. Here, on other hand, Kleser

---

[16] A number of courts, generally addressing the situation in which a defendant places his mental state at issue, have reasoned that the state would be at a disadvantage if it were not allowed to independently examine the defendant. *See Estelle v. Smith,* 451 U.S. 454, 465 (1981) ("When a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective

waived his right against self-incrimination by using Dr. Beyer as a surrogate to assert his own statements about the crime, and the State was put at an unfair disadvantage when the court prohibited Dr. Collins from interviewing Kleser regarding the offense.

¶ 116. Kleser contends that, because Dr. Collins had sufficient bases for her opinion, the State was not harmed by the circuit court's ruling. But the State had no practical opportunity to rebut Kleser's account of what happened the night of the offense.[17] Because Kleser was not on the stand, the State could not cross-examine him. The State was limited to rebutting Dr. Beyer's conclusions—which were based on Kleser's

means it has of controverting his proof on an issue that he interjected into the case."); *State v. Shackart,* 858 P.2d 639, 645 (Ariz. 1993) ("To hold otherwise would deprive the state of the only adequate means to contest the conclusions of a defense psychiatric expert."); *Mitchell v. State,* 192 P.3d 721, 723 (Nev. 2008) (not allowing the state to examine "would permit [the defendant] to enjoy the unfair asymmetry of being able to introduce defense expert witness testimony based upon personal interviews while denying State expert witnesses the same access").

[17] Thus, the facts here are distinguishable from the facts in *State v. Davis,* 2002 WI 75, 254 Wis. 2d 1, 645 N.W.2d 913. In *Davis,* the court ultimately found that the expert's testimony "did not require [the expert] to inquire into the relevant facts surrounding the case," *id.,* ¶ 41, and therefore the state could effectively rebut the *Richard A.P.* evidence without allowing the state's expert to personally interview the defendant. Dr. Beyer's testimony is clearly unlike the testimony in *Davis,* because Dr. Beyer both based her opinion on Kleser's description of the offense and testified as to that description. This is precisely the situation that *Davis* held would constitute a waiver of the privilege against self-incrimination.

first-hand account of the offense—using only Dr. Beyer's examination of Kleser, the criminal complaint, and the testimony of police officers. Thus, the State was at a serious disadvantage in attempting to rebut Dr. Beyer's conclusion that Kleser committed the offense out of rage and fear.

¶ 117. In sum, because Kleser waived his privilege against self-incrimination by putting the facts of the offense at issue through Dr. Beyer, and because this put the State at a serious disadvantage, the State was entitled to have an expert examine Kleser regarding those facts. Accordingly, we conclude that the circuit court erroneously exercised its discretion by allowing Dr. Beyer to testify regarding the offense while prohibiting Dr. Collins from interviewing Kleser regarding the same events. We, of course, are not suggesting that a person like Kleser must submit to an examination by a state expert in situations where the person has not waived the privilege against self-incrimination.

D. Appropriateness of Remand for a New Reverse Waiver Hearing

■■■

¶ 118. Finally, the State argues that the court of appeals decision to remand for a new reverse waiver hearing is moot because Kleser is now over the age of 18, and therefore no juvenile dispositions could be imposed upon him. Kleser argues that there is no mootness problem because the State filed a delinquency petition before Kleser turned 17, and therefore the juvenile court retains jurisdiction.

¶ 119. Under the Juvenile Justice Code, no dispositional options would be available for Kleser if the circuit court chose to order reverse waiver. Kleser

94

correctly points out that the juvenile court would retain jurisdiction because a petition alleging Kleser delinquent was filed before he turned 17. *See* Wis. Stat. § 938.12(2). However, we do not see the juvenile court's authority to issue a dispositional order after the juvenile turns 18, as the statute repeatedly uses the phrase "made before the juvenile attains 18 years of age." *See* Wis. Stat. § 938.355(4).

¶ 120. Wisconsin Stat. § 938.34(4h) provides for a "serious juvenile offender program" that allows a juvenile to remain in custody until the age of 25. However, the statute providing for termination of dispositional orders states, in relevant part:

> Except as provided in s. 938.368, an order under s. 938.34(4h) *made before the juvenile attains 18 years of age* shall apply for 5 years after the date on which the order is granted, if the juvenile is adjudicated delinquent [for certain offenses] or until the juvenile reaches 25 years of age, if the juvenile is adjudicated delinquent for committing an act that would be punishable as a Class A felony if committed by an adult.

Wis. Stat. § 938.355(4)(b) (emphasis added).

¶ 121. The fact that this statute explicitly permits placement in the program by a dispositional order "made before the juvenile attains 18 years of age," but contains no provision for a dispositional order made *after* 18 years of age, indicates that this dispositional option is not available after a juvenile turns 18. Therefore, if, somehow, Kleser's case were tried in juvenile court, he would not be eligible for placement in the serious juvenile offender program.

¶ 122. The fact that Kleser is no longer eligible for the serious offender program does not render this case moot. A case is moot when "a decision in the matter will

not have any practical effect upon an existing legal controversy." *Roth v. Lafarge School Dist. Bd. of Canvassers,* 2004 WI 6, ¶ 13, 268 Wis. 2d 335, 677 N.W.2d 599. Clearly, a decision in this matter would have a practical effect upon the legal controversy. This decision still affects whether Kleser goes free, is given another chance at a reverse waiver hearing, or remains in adult criminal court.

¶ 123. Although we conclude that this matter is not moot, we conclude that a remand for a new reverse waiver hearing is not appropriate under these facts. Remand is the appropriate course of action "[w]hen an appellate court is confronted with inadequate findings and the evidence respecting material facts is in dispute." *Wurtz v. Fleischman,* 97 Wis. 2d 100, 108, 293 N.W.2d 155 (1980). That situation is not present here. Kleser was given a full opportunity to present evidence at the reverse waiver hearing. The circuit court erroneously exercised its discretion by admitting inadmissible evidence and relying on that evidence, but these errors did not render the record inadequate for us to make a determination.

¶ 124. To us, the record demonstrates that Kleser failed to meet his burden of proving that (1) if convicted, the juvenile could not receive adequate treatment in the criminal justice system; (2) transferring jurisdiction to juvenile court would not depreciate the seriousness of the offenses; and (3) retaining jurisdiction is not necessary to deter the juvenile or other juveniles from committing the violations of which the juvenile is accused. We do not perceive any error that prejudiced Kleser; rather, we see errors that prejudiced the State. Remanding for a new reverse waiver hearing would serve only to give Kleser another opportunity to

meet a burden of proof that he failed to meet when given a full, fair opportunity to do so. This is not an appropriate reason to remand. *See State v. Rewolinski,* 159 Wis. 2d 1, 32, 464 N.W.2d 401 (1990) ("The rule permitting remand should not be used simply to give a party the opportunity to do what it should have done before."). Therefore, we conclude that remand is not appropriate under these facts.

¶ 125. As previously stated, the defendant in a reverse waiver hearing must prove three statutory elements by a preponderance of the evidence. Wis. Stat. § 970.032(2). Kleser was required to prove, notwithstanding probable cause that he committed first-degree intentional homicide (Wis. Stat. § 940.01(1)(a)), substantial battery (§ 940.19(2)), and battery by a prisoner (§ 940.20(1)), that his transfer from criminal court to juvenile court "would not depreciate the seriousness of" the offenses or undermine deterrence.

¶ 126. In 1997 Dominic E.W. struck a counselor at the Ethan Allen School for Boys. Waukesha County Circuit Judge Lee Dreyfus Jr. conducted a reverse waiver hearing and transferred Dominic E.W. to juvenile court. The persuasive arguments of Dominic E.W.'s counsel at that time help us to put this case in perspective. Dominic's counsel argued:

> Superintendents at Ethan Allen and Lincoln Hills Schools report that about 120 batteries to staff members have occurred since December, 1993. This is the *first case* in which a trial court exercised its discretion to transfer a battery to juvenile court.
>
> . . . .
>
> As the trial court also correctly noted, sec. 970.032(2) is discretionary, not mandatory. It does not require *all*

97

juveniles charged with battery to correctional officers to be tried in adult court. By its unambiguous terms, it expressly gives judges the discretion to transfer jurisdiction over some of those cases back to juvenile court.

. . . .

With regard to the seriousness of the offense, at sec. 970.032(2)(b), the court expressed its sensitivity to the concerns addressed by the statute, when it stated "clearly it has to be viewed as a serious offense any time a staff member is injured or otherwise battered." On the other hand, when one considers the range of actions encompassed by the term "battery," there was ample evidence that this was a less serious battery than others.

[A]s the court noted, this battery was a simple battery which would have been a misdemeanor, had it not involved a staff member of a correctional facility. It did not cause substantial bodily harm or great bodily harm, and it did not involve a victim who was elderly or physically disabled, . . .

The "seriousness of the offense," must also be considered in the context of the type of crime which results in adult charges being filed pursuant to sec. 938.183 (1), Stats. *Dominic's offense was clearly less serious than first-degree intentional homicide,* first-degree reckless homicide, second-degree intentional homicide, and attempted first-degree intentional homicide, the offenses charged in adult court pursuant [to] sec. 938.183(1)(am), Stats. (Emphasis added.)

¶ 127. In this case, Kleser did not dispute that the deceased suffered at least 20 blows to the head, 30 stab wounds to the neck, and various other wounds. He admitted to a police officer that he stabbed the deceased in the neck multiple times with a pair of scissors after he realized that the man was still alive. He is charged

with two additional felonies involving violence to a fellow prisoner. We conclude that transferring this 19–year-old defendant to juvenile court would depreciate the seriousness of the offenses and undermine deterrence.

## IV. CONCLUSION

¶ 128. We conclude, first, that a juvenile has a right to a reverse waiver hearing after the criminal court finds probable cause to believe that the juvenile has committed the exclusive original jurisdiction violation or violations of which he is accused. In a reverse waiver hearing, the juvenile must prove all elements set out in § 970.032(2)(a), (b), and (c) by a preponderance of the evidence. If the juvenile fails to meet his burden of proof, he shall be retained for prosecution in the criminal court. Thus, the juvenile must be given reasonable latitude to offer admissible evidence to satisfy his burden on the three elements. This includes evidence about the offense, supplementing the facts used to establish probable cause, to put the offense in context. The juvenile may not offer evidence in the reverse waiver hearing for the purpose of contradicting the offense charged. The place to offer evidence for the purpose of contradicting the offense charged is the preliminary examination.

¶ 129. Second, we conclude that the circuit court erred in granting reverse waiver here, for three reasons. (1) The court substantively relied on inadmissible hearsay testimony from Dr. Beyer describing the events of the offense; (2) the court allowed Dr. Beyer to offer inadmissible opinion testimony regarding Kleser's truthfulness; and (3) the court erroneously prohibited the State's psychologist from interviewing Kleser re-

garding the facts of the offense while permitting Dr. Beyer to testify as a conduit for Kleser's account of the facts of the offense.

¶ 130. Finally, we conclude that remand for a new reverse waiver hearing would not be appropriate under these facts.

¶ 131. Consequently, we affirm the decision of the court of appeals reversing the circuit court order transferring jurisdiction of this case to the juvenile court, but we reverse the court of appeals' order remanding the case for a new reverse waiver hearing, and remand the case to adult criminal court for trial.

*By the Court.*—The decision of the court of appeals is affirmed in part and reversed in part, and the cause is remanded to the circuit court.

¶ 132. ANN WALSH BRADLEY, J. (*concurring in part, dissenting in part*). I agree with the majority that the juvenile must be given reasonable latitude to offer admissible evidence for the purpose of meeting his burden to prove the three elements for reverse waiver. Majority op., ¶ 84. I also agree with the majority that the juvenile may offer evidence at the reverse waiver hearing that contradicts the offense charged as long as the proffered evidence is relevant to any of the three elements for reverse waiver under Wis. Stat. § 970.032. *Id.*

¶ 133. Although the majority correctly sets forth the law in much of its discussion, I disagree with the majority in its application of the law. Specifically, I part ways with the majority when it concludes that the circuit court erroneously exercised its discretion in its evidentiary rulings. Additionally, I disagree with the majority when it substitutes its judgment for that of the circuit court on the discretionary determination of

whether a transfer to juvenile court would unduly depreciate the seriousness of the offense. Accordingly, I respectfully concur in part and dissent in part.

I

¶ 134. The majority concludes that the circuit court erred by (1) relying on inadmissible hearsay testimony from Dr. Beyer describing the events of the offense; (2) permitting Dr. Beyer to vouch for Kleser's credibility; and (3) prohibiting the State's psychologist from interviewing Kleser about the facts of the offense. It further concludes that the circuit court erroneously exercised its discretion because, as a matter of law, Kleser failed to prove that transferring the case to juvenile court would not unduly depreciate the seriousness of the offense. *Id.*, ¶ 124.

¶ 135. Unlike the majority, I determine that the circuit court did not erroneously exercise its discretion: (1) even if the circuit court erroneously relied on hearsay testimony presented by Dr. Beyer, such reliance was not harmful because essentially the same information was presented through the testimony of another witness; (2) the record does not support the majority's conclusion that Dr. Beyer impermissibly vouched for Kleser's credibility; (3) the majority erroneously limits the flexibility of the circuit court to balance the competing interests of protecting the juvenile's Fifth Amendment privilege against self-incrimination and the need of the State to present rebuttal testimony; and (4) the majority improperly substitutes its judgment for that of the circuit court when it concludes that the transfer would unduly depreciate the seriousness of the offense.

¶ 136. I conclude that this case should be remanded to the circuit court for a determination of

whether, given the current age of the "juvenile," reverse waiver is appropriate or even feasible. If not, I agree with the majority that jurisdiction should remain in adult criminal court.

## II

¶ 137. The majority correctly states that the court was permitted to consider Dr. Beyer's opinion and that Dr. Beyer's opinion could be based on inadmissible evidence. *Id.*, ¶ 91, n.9. Further, it explains that Wis. Stat. § 907.03 is not a hearsay exception, and an expert's reliance on inadmissible evidence to form an opinion does not render that evidence admissible. *Id.* These statements accurately describe the law.

¶ 138. However, in applying the law to these facts, the majority determines that "without Dr. Beyer's hearsay testimony, Kleser would not have sustained his burden of proving that transferring jurisdiction would not depreciate the seriousness of the offense." *Id.*, ¶ 97. I do not necessarily agree with the majority's conclusion that Dr. Beyer's opinion contained inadmissible hearsay.[1] However, even if it did, I conclude that the error was harmless and that without this evidence, Kleser would have sustained his burden.

---

[1] *See* Daniel D. Blinka, *Wisconsin Practice Series: Wisconsin Evidence,* § 803.04 at 754–58 (3d ed. 2008) (discussing Wis. Stat. § 908.03(4), statements for purposes of medical diagnosis or treatment). "Put differently, the fact that an expert was consulted solely for the purpose of giving testimony affects only the weight to be given the statement, not admissibility." *Id.* at 756. "The rule expressly permits some latitude regarding statements which relate how the condition occurred, provided the cause of the affliction is reasonably pertinent to the diagnosis or treatment." *Id.* at 757.

¶ 139. The majority takes issue with the circuit court's reliance on facts presented by Dr. Beyer. It concludes that Dr. Beyer's hearsay testimony and report "were the principal bases for the circuit court's finding that Kleser acted out of fear and rage." *Id.*, ¶ 96. This assertion is not supported by the record.

¶ 140. As the majority sets forth, Dr. Beyer testified that Kleser related the following facts about the night of the incident: Kleser drank a lot of alcohol that night. He received a phone call from Adams, who offered to pay him to pose nude, as he had done before. Kleser agreed. The "usual scenario" unfolded when he got to the apartment. Kleser was surprised when Adams wanted to have sex, and he told Adams no. Adams attacked him and tried to rape him. Kleser's pants were around his ankles, and he could not really move. Adams was on top of Kleser as they struggled. Adams was choking Kleser, who could not breathe. Kleser felt powerless and felt like he was going to pass out. Kleser grabbed a hammer and hit Adams until he could escape. *Id.*, ¶ 28.

¶ 141. These facts closely parallel the facts that Kleser provided to Detective Johnson during a custodial interview. Both parties deemed Johnson's testimony admissible evidence. He testified that Kleser related the following facts: Kleser had met Adams several months before and had gone to Adams' apartment five or six times previously. Kleser would disrobe and "pose nude basically for Mr. Adams[.]".

¶ 142. Johnson testified that the night of the incident, "upon coming over to Mr. Adams' apartment, [] Mr. Adams wanted to engage in some type of sexual intercourse with him." Kleser "did not want to engage in having any type of sex with Mr. Adams." Kleser said

that Adams "tried to force himself in him and he actually put his hands on Corey[.]" Adams "approached him and tried to stick his dick in his ass[.]" "[I]t was a physical altercation and struggle and something[.]" "[T]here was a point in time when Mr. Adams had grabbed him and tried to choke at him[.]" Kleser "said he grabbed a hammer" and that he was able to "fend [him] off."

¶ 143. The facts of the offense, as testified to by Dr. Beyer, are nearly identical to the facts later testified to by Detective Johnson. If the circuit court erred by permitting Dr. Beyer to testify about Kleser's account of the incident, I conclude that error was harmless.

¶ 144. The majority also takes issue with the circuit court's conclusion that Kleser killed Adams out of fear and rage. *Id.*, ¶ 96. Yet, there is no reason that the circuit court should not have relied on Dr. Beyer's expert opinion that Kleser acted out of fear and rage. An expert is allowed to base an opinion on inadmissible evidence, and that expert can testify as to her opinion in court.[2] The conclusion that Kleser acted out of fear and rage is an expert opinion. The majority acknowledges that the court was permitted to rely on Dr. Beyer's expert opinion. Therefore, the circuit court did not err by relying on Dr. Beyer's expert opinion that Kleser acted out of fear and rage.

_____

[2] In a footnote, the majority indicates that Dr. Beyer could not have relied on Detective Johnson's testimony in formulating her conclusion that Kleser acted out of fear and rage. Majority op., ¶ 96, n.11. In making this assertion, the majority confuses the issues. Dr. Beyer did not need to rely on Detective Johnson's account of the facts. Because experts may rely on inadmissible evidence in formulating an opinion, Dr. Beyer was entitled to rely on Kleser's own description of the facts.

## III

¶ 145. The majority also accurately explains that an expert cannot vouch for the credibility of a witness and that the expert need not explicitly state that she believes a person is telling the truth for the opinion to constitute improper vouching testimony. *Id.*, ¶ 102. However, the majority errs in its application of these rules.

¶ 146. As the majority reports, Dr. Beyer never explicitly testified about the credibility of Kleser's account. Unlike the majority, I conclude that there was no implicit vouching, either. In fact, the majority treads on dangerous territory when it concludes as a matter of law that this type of expert testimony is a violation of the longstanding rule that prohibits a witness from testifying about the veracity of another witness. *See State v. Haseltine*, 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984).

¶ 147. The majority acknowledges that Dr. Beyer prefaced many of her statements with the phrase, "Kleser reported." Majority op., ¶ 101. The only phrase the majority points to as improper vouching is actually a statement from Kleser's attorney, who requested that Dr. Beyer "explain what happened that night as far as you understand it." *Id.* It this context, it is clear that the attorney was asking Dr. Beyer to relate the events that Kleser had described, rather than asking her to offer an opinion about Kleser's truthfulness. The majority has not pointed to any portion of Dr. Beyer's testimony that offered an opinion on Kleser's credibility.

¶ 148. The questions asked by Kleser's attorney and the responses provided by Dr. Beyer are similar to questions and answers routinely made in courtrooms around the state. To elevate a question prefaced with

105

"as you understand it" and the response "Kleser reported" to the height of a *Haseltine* violation sets up an unworkable evidentiary standard for litigants, attorneys, and the circuit courts.

## IV

¶ 149. The majority concludes that the circuit court erroneously exercised its discretion by refusing to allow the State's psychologist to interview Kleser about the facts of the offense. *Id.*, ¶ 109. It explains that "Kleser waived his privilege against self-incrimination by putting his account of the offense into issue through his expert." *Id.*

¶ 150. The United States Supreme Court has explained "if a defendant requests [a psychiatric] evaluation or presents psychiatric evidence, then, at the very least, the prosecution may rebut this presentation with evidence from the reports of the examination that the defendant requested." *Buchanan v. Kentucky*, 483 U.S. 402, 422–23 (1987). "The defendant would have no Fifth Amendment privilege against the introduction of this psychiatric testimony by the prosecution." *Id.* at 423.

¶ 151. Here, the primary purpose of expert testimony from both psychologists was to assess whether Kleser's treatment needs could be met in adult court. The record reflects that the circuit court was cognizant of the need to balance the State's right to present rebuttal testimony and Kleser's privilege against self-incrimination. It fashioned a solution where the State's psychologist could interview Kleser, without an attorney present, and ask him questions about any subject except for the facts of the offense.

¶ 152. Courts need the flexibility to fashion a solution to address these competing interests given the facts and procedure of the individual case. Here, I

applaud the efforts of the circuit court judge in fashioning a solution to address the competing interests. The majority, instead, finds as a matter of law that it was an erroneous exercise of discretion.

¶ 153. The State's psychologist had access to the interview conducted by Detective Johnson and the interview conducted by Dr. Beyer. She was also permitted to examine Kleser, without an attorney present, about any subject except the facts of the offense. Based on her examination of Kleser and other sources, the State's psychologist was able to provide diagnoses "to a reasonable degree of professional certainty."

¶ 154. Given the competing interests of the State's right to rebut Dr. Beyer's conclusions and Kleser's privilege against self-incrimination, courts should be permitted flexibility to use their discretion and fashion a reasonable solution. I conclude that the balance struck by the circuit court was not an erroneous exercise of discretion.

V

¶ 155. Finally, the majority concludes—apparently as a matter of law—that transferring the case to juvenile court would unduly depreciate the seriousness of the offense. Majority op., ¶ 127. In so concluding, it substitutes its own judgment for the circuit court's exercise of discretion.

¶ 156. There are some determinations that seem quintessentially within the province of the circuit court's sound exercise of discretion, and a circuit court should be accorded great latitude when making these discretionary determinations. I conclude that the determination of whether transfer to juvenile court would unduly depreciate the seriousness of the offense is one

such determination. "A decision to retain or transfer jurisdiction in a reverse waiver situation [under Wis. Stat. § 970.032] is a discretionary decision for the trial court." *State v. Dominic E.W.,* 218 Wis. 2d 52, 56, 579 N.W.2d 282 (Ct. App. 1998).

¶ 157. Each day, courts around this state make a similar determination. During sentencing, a court must consider probation as the first alternative, but may reject probation if it finds that it would "unduly depreciate the seriousness of the offense." *State v. Gallion,* 2004 WI 42, ¶ 44, 270 Wis. 2d 535, 678 N.W.2d 197. I find no principled distinction between the degree of latitude that should be accorded to these discretionary determinations. If an appellate court can substitute its judgment for that of the circuit court and determine as a matter of law that transfer to juvenile court would unduly depreciate the seriousness of the offense, an appellate court can do likewise when assessing whether probation unduly depreciates the seriousness of the offense. This could invite countless appeals.

¶ 158. An appellate court should sustain a discretionary decision if the circuit court examined the relevant facts, applied a proper standard of law, and using a demonstrated rational process, reached a decision that a reasonable judge could reach. *Loy v. Bunderson,* 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982). I conclude that is what the circuit court did here. Absent an erroneous exercise of discretion, an appellate court should not substitute its own judgment for that of the circuit court—even if it would have decided the issue differently. *See Kolupar v. Wilde Pontiac Cadillac, Inc.,* 2004 WI 112, ¶ 22, 275 Wis. 2d 1, 683 N.W.2d 58.

¶ 159. Because I conclude that the circuit court did not erroneously exercise its discretion, I would affirm its reverse waiver determination. However, given

the passage of time and the current age of the "juvenile," I recognize that reverse waiver may no longer be appropriate or even feasible. On remand, I would instruct the circuit court to determine if reverse waiver is still appropriate. If the circuit court determines that it is not, jurisdiction should remain in adult criminal court. For the reasons set forth above, I respectfully concur in part and dissent in part.

¶ 160. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this concurrence/dissent.