**COURT OF APPEALS
DECISION
DATED AND FILED**

**April 11, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1014-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2006CF80

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

PAUL BRIAN KRAUSS,

    DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Pierce County: ELIZABETH L. ROHL, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Paul Krauss, pro se, appeals from an order denying his postconviction motion for DNA testing.[1] We conclude that Krauss failed his burden to satisfy the criteria for the circuit court to order DNA testing under Wis. Stat. § 974.07(7)(a) (2021-22).[2] We further conclude that any error in the court's failure to refer Krauss to the State Public Defender (SPD) for appointment of counsel to pursue postconviction DNA testing was harmless. We affirm the order.

## BACKGROUND

¶2 Krauss was convicted, following a jury trial, of second-degree sexual assault by use of force; second-degree reckless endangerment; false imprisonment; knowingly violating a domestic abuse injunction; and bail jumping. The charges followed contentious divorce proceedings and the issuance of a domestic abuse injunction prohibiting Krauss's contact with his ex-wife.

¶3 Krauss's ex-wife testified at his trial that she awoke on June 2, 2006, to find Krauss leaning over her with a green-handled knife to her throat. Krauss grabbed and bit her breasts, pushed her underwear to one side, exposed his penis, and slapped his penis against her vaginal area. Krauss stopped when she stated, "If you want to do this, you're going to have to rape me." Krauss eventually led his ex-wife to the garage and told her he did not know if he would kill her or himself. Krauss zip-tied her hands behind her back, used a rope to tie her arms to a shelf, and put duct tape on her mouth.

---

[1] The Honorable John A. Damon presided over Krauss's trial and his first postconviction motion. The Honorable Elizabeth L. Rohl presided over Krauss's postconviction motion for DNA testing.

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶4 Krauss then climbed onto the hood of a truck, made a noose, threw it over a rafter, and hung himself for a few seconds before he began to panic and got himself back onto the truck and loosened the noose. He then removed the duct tape, untied his ex-wife's arms, and cut the zip ties from her wrists before leading her back into the house with the knife to her back. Krauss's ex-wife testified that she realized the only way she would "get[] him out of here" was to "convince him that everything is fine," so she told Krauss that "we would get back together, that I still loved him, everything was all right." Krauss's demeanor then changed; he calmed down and left the premises. His ex-wife then called 911. Krauss was apprehended several days later in a Minnesota hotel room where law enforcement officers recovered zip ties, and a roll of duct tape was found in his vehicle.

¶5 In 2009, Krauss filed a postconviction motion claiming ineffective assistance of counsel and an erroneous exercise of the circuit court's sentencing discretion. We affirmed Krauss's convictions and the denial of his postconviction motion. *State v. Krauss*, No. 2009AP1059-CR, unpublished slip op. ¶2 (WI App Mar. 9, 2010).

¶6 Twelve years later, Krauss moved for mandatory DNA testing of the green-handled knife pursuant to WIS. STAT. § 974.07(7)(a).[3] In conjunction with his motion, Krauss also filed an affidavit of indigency and asked the circuit court to refer his case to the SPD for appointment of counsel under WIS. STAT. § 977.05(4)(i). The court denied Krauss's postconviction motion for DNA testing without a hearing, concluding that § 974.07(7)(a)4.'s chain of custody requirement

---

[3] Krauss invoked WIS. STAT. § 974.07(7)'s provision for mandatory testing in his motion. Therefore, we address only whether Krauss satisfied § 974.07(7)(a)'s requirements for mandatory testing.

3

was not satisfied. The court's order did not address Krauss's motion for appointment of counsel. Krauss now appeals.

## DISCUSSION

*I. DNA testing under WIS. STAT. § 974.07*

¶7 A circuit court "shall order" postconviction DNA testing of evidence if the movant satisfies all four criteria provided in WIS. STAT. § 974.07(7)(a)1.-4. *See State v. Denny*, 2017 WI 17, ¶¶51-52, 373 Wis. 2d 390, 891 N.W.2d 144. If the defendant fails to satisfy any one of these four criteria, we need not address the others. *Id.*, ¶73. There is no dispute that Krauss satisfied three criteria under § 974.07(7)(a)1.-3. The principal issue in this appeal involves the fourth criterion—the chain of custody requirement under § 974.07(7)(a)4.[4] Under that statutory subdivision, Krauss was required to prove:

> The chain of custody of the evidence to be tested establishes that the evidence has not been tampered with, replaced, or altered in any material respect or, if the chain

---

[4] In his brief to this court, Krauss does not discuss our standard of review. The State argues that we review the circuit court's decision to grant or deny a request for mandatory DNA testing under WIS. STAT. § 974.07(7)(a) for an erroneous exercise of discretion. *See State v. Hudson*, 2004 WI App 99, ¶16, 273 Wis. 2d 707, 681 N.W.2d 316. Krauss did not file a reply brief and therefore has not disputed the State's position regarding our standard of review. We observe, however, that *Hudson* involved a "reasonable probability" determination under § 974.07(7)(a)2., and that subdivision is not at issue here. Regardless, we need not determine which standard of review is applicable to Krauss's § 974.07(7)(a)4. claim because the chain of custody requirement was not satisfied under either a discretionary or a de novo standard.

4

> of custody does not establish the integrity of the evidence, the testing itself can establish the integrity of the evidence.

Sec. 974.07(7)(a)4.

¶8      We agree with the circuit court's determination that Krauss failed to meet his burden to satisfy the fourth criterion.  As the court noted, law enforcement officers did not locate the green-handled knife at the residence after the crimes were committed.  The green-handled knife was found by Krauss's father sometime after Krauss's arrest while he was moving Krauss's belongings, but it is unclear from the record how much time had passed from the date the crimes were committed to the date when the knife was discovered.  Krauss does not account for the knife's whereabouts from the time of the assault to the time his father found it after his arrest, or how the knife got from the location where the crimes occurred to the place where it was later discovered.  In support of his motion for DNA testing, Krauss's mother submitted an affidavit asserting that her husband "carefully collected the knife using methods for evidence collection used by the police."  This assertion is conclusory and it fails to explain how Krauss's father collected the knife and preserved it to prevent contamination.  Krauss's motion for DNA testing also reflects that Krauss's sons lived with him at the home where the knife was found.

¶9      The affidavit from Krauss's mother also asserted that at some point, "different public defenders assigned to [Krauss's] case" were notified about the knife, but it was not turned over to law enforcement.  Prior to Krauss's 2009 postconviction hearing—which was held several years after the knife was found—his parents turned the knife over to a forensic specialist hired by Krauss.  The forensic specialist submitted the knife during the 2009 postconviction hearing, and it was received into evidence.

¶10     Krauss asserted in his motion for DNA testing that the knife was properly preserved during the time between its discovery by his father and when it was turned over to the forensic specialist. However, Krauss's father passed away and therefore could not be questioned about whatever method he used to collect and preserve the knife.

¶11     Once the forensic specialist took possession of the knife, it was examined and "used to perform an analysis." The forensic specialist provided no explanation, however, as to the condition of the knife when he received it. He did not specify what he did with the knife while he "used it to perform an analysis,"—nor did he discuss preservation of any DNA evidence from the knife itself. The circuit court correctly recognized that "[w]hatever analysis was conducted using the knife could have affected the integrity of any DNA that may have been present." The record also does not reflect whether the knife was submitted into evidence at the 2009 postconviction hearing in a manner that would have protected its integrity from the time it was received. The clerk's exhibit list simply states "in box [with] trial exhibits" and "retained by clerk."

¶12     The circuit court's conclusion that Krauss did not satisfy the chain of custody requirement is thus supported by Krauss's failure to prove that the integrity of evidence was maintained during the time between the commission of the crimes and the discovery of the knife; the family's retention of the knife for several years; the forensic specialist's handling of the knife; and the clerk's lengthy retention of it. As the court correctly stated: "The statute requires that the chain of custody 'establishes that the evidence has not been tampered with, replaced, or altered in any material respect.' That is not established here." The court did not err by denying Krauss's postconviction motion for DNA testing of the knife.

*II. Any error in failing to refer Krauss to the SPD was harmless*

¶13    Krauss also contends that WIS. STAT. § 977.05(4)(i) mandated the appointment of counsel to represent him on his postconviction motion for DNA testing.   He is incorrect, as § 977.05(4)(j) provides the SPD with discretion to appoint counsel.   As a rule, defendants do not have a constitutional right to counsel for a collateral challenge to a conviction following a direct appeal. *See State ex rel. Wren v. Richardson*, 2019 WI 110, ¶27 n.21, 389 Wis. 2d 516, 936 N.W.2d 587.   Moreover, § 977.05(4)(j), read in conjunction with WIS. STAT. § 974.07(11), confers, at most, a right to be referred to the SPD for the possible appointment of counsel.

¶14    It is undisputed that the circuit court did not address in its order Krauss's request for determination of indigency and referral for appointment of counsel.   But any error in that regard is harmless for several reasons. *See* WIS. STAT. § 805.18.   First, even if the court had referred Krauss to the SPD as he requested, Krauss has not shown that the SPD would have exercised its discretionary authority to appoint counsel.

¶15    More importantly, Krauss's substantial rights were not affected because there is no probability of a different outcome had counsel been appointed. *See State v. Kleser*, 2010 WI 88, ¶94, 328 Wis. 2d 42, 786 N.W.2d 144.   Even with the SPD's assistance, Krauss could not overcome the significant gaps and uncertainty concerning the green-handled knife's chain of custody, a necessary prerequisite to obtaining mandatory DNA testing under WIS. STAT. § 974.07(7)(a)4.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.